Elizabeth BANNER, Plaintiff,

Michael Freifeld and Law Office of Glen N. Lenhoff, Appellants,

Tom R. Pabst, Appellant.

v.

City of Flint and Carl Hamilton, Defendants–Appellees.

Nos. 01–1118, 01–1401 and 02–1297.

United States Court of Appeals, Sixth Circuit.

April 8, 2004.

E. Michael Morris, Morris & Doherty, Birmingham, MI, Michael A. Kowalko, Flint, MI, for Appellants.

Tom R. Pabst, Flint, MI, pro se.

Terrence J. Miglio, Brian A. Kreucher, Barbara Endoy, Keller, Thoma, Detroit, MI, H. William Reising, Plunkett & Cooney, Flint, MI, Ernest R. Bazzana, Plunkett & Cooney, Detroit, MI, for Defendants–Appellees.

Before: MARTIN and DAUGHTREY, Circuit Judges, and O'MALLEY, District Judge.*

PER CURIAM.

These consolidated appeals challenge three orders entered by the district court imposing sanctions against attorney Michael Freifeld, his law firm, and attorney Thomas Pabst. The underlying case was settled and dismissed by stipulation of the parties.

The factual circumstances in this case are complex and unlikely to be repeated. At the same time, Messrs. Freifeld and Pabst raise a great number of issues, stemming in part from the complicated nature of the relevant facts. A full discussion of the facts, and a complete analysis of the issues raised, would require a lengthy opinion. This case, however, has minimal precedential value. For these reasons, we have set forth below only an abbreviated discussion of the factual history and the many arguments raised. even though our analysis has been painstaking. Ultimately, we conclude as follows.

With regard to the district court's sanction order against attorney Freifeld and his law firm: (1) the district court was within its rights to conduct an evidentiary hearing regarding Freifeld's behavior; (2) the district court properly used a de novo review of the Magistrate Judge's ruling; (3) the district court concluded correctly that Freifeld did breach Michigan Rule of Professional Conduct 1.6; (4) the district court had the authority to impose sanctions for this breach; (5) Freifeld and his law firm received adequate notice before the district court imposed sanctions; (6) neither the sanction of $15,000 in attorney fees payable to defendant Flint, nor the sanction of $5,000 in attorney fees payable to defendant Rose, were unreasonable, and both sanctions were within the district court's power and discretion; (7) the district court had the power and authority to impose a $5,000 sanction in the form of a fine payable to the court: (8) the district court followed the proper procedure regarding imposition of the $5,000 sanction, given that the sanction was not in connection with a finding of contempt; (9) nonetheless, the sanction of $5,000 payable to the clerk of court was unreasonable and an abuse of discretion in the circumstances, because the $20,000 attorney fee sanctions alone adequately served the necessary punitive and deterrent purposes. Accordingly, we **AFFIRM** the sanction against Freifeld and his law firm of $15,000 in attorney fees payable to defendant Flint, and **AFFIRM** the sanction against Freifeld and his law firm of $5,000 in attorney fees payable to defendant Rose, but we **REVERSE** the sanction against Freifeld of $5,000 payable to the clerk of court.

With regard to the sanctions against attorney Pabst: (1) the Anti–Injunction Act is inapposite to the question of the court's authority to sanction Pabst's conduct; (2) the propriety of the district court's injunction is controlled by Fed.

* Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

R.Civ.P. 65; (3) the district court's injunction was arguably overbroad, to the extent it forbade use of the Rose deposition in *any* case by *any* attorney, but it was not overbroad as to attorney Pabst, who was acting "in active concert or participation" with Freifeld; (4) despite this possible overbreadth, Pabst's willful defiance of the district court's injunction order was completely inappropriate; (5) the district court was correct in its conclusion that Pabst disobeyed a district court order, he did so deliberately, and he did so beyond a reasonable doubt (*see In re Smothers*, 322 F.3d 438, 441–42 (6th Cir.2003)); (6) the $1,000 and $2,000 fines payable to the clerk of court, although reasonable in amount, were criminal in nature; (7) as such, the district court had to comply with the notice provisions of Fed.R.Crim.P. 42(b); (8) as to the first contempt fine of $1,000, the district court did not comply with Rule 42(b), because it did not give Pabst adequate notice that he might be subject to criminal sanctions; (9) as to the second contempt fine of $2,000, Pabst did receive adequate notice; and (10) the trial judge did not err when she declined to recuse herself. Accordingly, we **AFFIRM** the $2,000 sanction against Pabst, payable to the Clerk of Court, but we **REVERSE** the $1,000 sanction against Pabst, payable to the Clerk of Court, and REMAND this case with directions that the district court may address again the propriety of the first sanction against Pabst.

Finally, we **DENY** the motion by Flint and Rose for sanctions against Pabst on appeal.

## I. BACKGROUND

Michael Freifeld, an associate in the Law Office of Glen N. Lenhoff (the Law Firm). represented Elizabeth Banner in a race discrimination case against Flint. In early 2000, another Flint employee, Vickie Rose, met Freifeld separately to discuss a potential employment-related claim against Flint. During Rose's meeting with Freifeld, she shared confidential information about her job. During the consultation, Freifeld told Rose that he represented Banner and that he might wish to call Rose as a witness. He asked Rose to sign an affidavit in support of Banner's claims, but she refused. Ultimately, Rose decided not to retain Freifeld and not to sue Flint, opting instead to avoid disruption of her job.

Freifeld later noticed Rose's deposition in the Banner case as an employee-witness, and Flint. not being aware of Freifeld's earlier conversations with Rose, instructed Rose to appear. On March 7, 2000, Rose was deposed by Freifeld without the benefit of personal counsel. Freifeld proceeded to question Rose about the matters discussed during their initial attorney-client consultation. While Rose responded to the questions put to her, Rose later testified that she did not appear at the deposition voluntarily, but was required to do so by her job, and that she did not voluntarily provide information in order to assist Banner's case against Flint. Rose also said she did not think Freifeld would ask about the confidential matters they discussed, and that Freifeld never told her that she had the right to assert an attorney-client privilege or any other right to confidentiality with respect to her earlier discussions with him.

After Freifeld deposed Rose, he gave a copy of the transcript to Pabst, a lawyer who was not associated with the Law Firm, but was involved in other cases against Flint. Pabst deposed Rose in May in connection with a state-court employment action against Flint and asked about the confidential information she had provided to Freifeld.

In June, facilitators in *Banner* recommended a settlement of $170,000. The parties did not initially agree to this settlement. On June 27, Flint and Rose moved for an order: 1) striking Rose's deposition testimony; 2) preventing her deposition testimony from being used in *any* legal or administrative proceeding; 3) barring Banner's attorneys from inquiring into areas in which Rose could assert her attorney-client privilege; and 4) imposing sanctions. In opposition. Banner argued that Rose waived her attorney-client privilege by voluntarily appearing at the deposition and answering questions without objection. Freifeld and the Law Firm argued that they committed no ethical violations. A magistrate judge held a hearing and issued an order denying the motion to strike on grounds that, even if she did not understand the concept of attorney-client privilege, Rose had, nonetheless, waived her privilege vis-a-vis Freifeld by answering questions at the deposition without a contemporaneous objection. Flint and Rose filed objections in district court, seeking an order granting their motions or a hearing.

In October, the parties reached an agreement to settle the Banner case for $130,000. On October 10, Lenhoff, Freifeld, and attorneys for Flint were to meet with the district judge for a pretrial conference in another case. The parties told her the *Banner* case had settled. She asked about the objections to the magistrate judge's order and said she was concerned about the deposition. Though Freifeld and the Law Firm argued that those matters had been mooted by the settlement, the judge told Freifeld and Lenhoff that she was referring the matter to the Michigan Attorney Grievance Committee and ordered them to appear, along with Rose, for *in camera* review of all records about Rose.[1]

The court held an evidentiary hearing on November 3, 2000. The court explained that the hearing was necessary because of her concern that certain ethical violations had occurred in a matter pending before her; the court found that the settlement did not moot those concerns. The parties not only addressed the issues presented to the magistrate judge, but, at the request of the district judge, also addressed Michigan Rule of Professional Conduct 1.6, covering confidentiality. The parties had earlier briefed Michigan Rule of Professional Conduct 1.9, regarding the attorney-client privilege and its application to former clients, but had not addressed a lawyer's general obligation to maintain client confidences.

The district court found that Freifeld and the Law Firm breached both the attorney-client privilege and the obligation of confidentiality imposed by Rule 1.6 in taking the Rose deposition. The court set aside as clearly erroneous the magistrate judge's order denying the motion to strike the deposition. The court stated that Freifeld showed "a disregard for the rules of professional conduct" and found he and his law firm misinterpreted another ethics rule not at issue here.[2]

The court remarked that Freifeld "display[ed] a reckless attitude toward the rules of professional conduct" in pressur-

1.  It does not appear that either Flint or Rose sought to keep the matter alive post-settlement; all parties appear to have been surprised by the district court's unwillingness to ignore this seemingly collateral issue.

2.  Both the magistrate judge and district court found that Freifeld and his firm had engaged in improper *ex parte* contact with Flint's former employees in violation of Michigan Rule of Professional Conduct 4.2 and barred further such contact, though no sanction was imposed in connection with that conduct. The parties have not appealed that aspect of the lower court's ruling.

ing Rose to disclose confidential information and that he showed a lack of concern for whether her disclosures would be detrimental once revealed. This violated "the spirit, if not the letter," of the Michigan Rules, according to the district court. The court struck Rose's deposition; enjoined *Banner's attorneys* from distributing it or disclosing its contents; and prohibited them from deposing Rose about matters in it. The court also enjoined use of the deposition in *any other proceeding by any attorney*. Finally, the court imposed a $5,000 sanction payable to the court against Freifeld, and ordered Freifeld and the Firm to pay Flint's attorney $15,000 in fees (relating to the Rose deposition, the motion for a protective order and the hearing) and to pay Rose's attorney $5,000 for fees (in connection with her request for a protective order and attendance at the hearing). Lastly, the district court stated it would refer Freifeld and the Law Firm to the state Attorney Grievance Commission.

After the district court prohibited the deposition's use, an attorney for Flint sent a letter to Pabst with a copy of the order, telling Pabst that the court had barred him from using the deposition in state court. Pabst disagreed, asserting that he did not believe the order could bind him in state court and stating that he would ask the state court to conduct its own hearing. Pabst made several filings in state cases, attaching complete transcripts of the deposition to two motions, stating he was challenging the injunction. Pabst did not seek relief from the federal court order before the district court, however, and he did not seek to appeal that order to this Court. Indeed, Pabst concedes that he knowingly violated the district court order based on his own determination that the order was invalid. Attorneys for Flint and Rose filed a motion in the district court to hold Pabst in contempt. In his answer, Pabst made many arguments, including his assertion that the district judge should disqualify herself because she had displayed hostility toward Banner's attorneys by sanctioning them, that the injunction did not comply with Federal Rule of Civil Procedure 65(d), that Pabst was not among the parties or agents involved in *Banner* or in active concert or participation with them, and that the order could not apply to his actions in state court.

The district judge denied the motion to disqualify herself. The court then found that Pabst was bound by her order and held Pabst in contempt, imposing a sanction of $1,000 payable to the court. Despite this order, Pabst continued to ignore the injunction. Again, Pabst did not seek and await an order setting aside the injunction; he, instead, continued to ignore the injunction order based on his own disagreement with the trial judge's authority to enter it. In September 2001, Pabst filed an answer to Flint's motions in state court and renewed a request for an evidentiary hearing, again attaching the deposition transcript. Flint again sought sanctions against Pabst. On January 23, 2002, the district court held yet another hearing and imposed an additional fine of $2,000 on Pabst, payable to the Clerk of Court, for contempt. Pabst finally filed a motion to modify the injunction with the district court on April 22, 2002. That motion was denied. While Pabst did not appeal the district court's Spring, 2002 order, he did timely appeal the two sanctions orders entered in February, 2001 and January, 2002, respectively. Both of Pabst's appeals have been consolidated with the appeals taken by Freifeld and the Law Firm.

## II. ANALYSIS

### A. *Freifeld's Appeal*

Freifeld's multiple assertions fall into three categories. First, the district court

did not have authority to reverse the magistrate judge and used the wrong standard of review in doing so. Second, the court's analysis of attorney-client privilege was wrong with respect to waiver, as was its analysis of the Michigan Rules of Professional Conduct. Third, the district court abused its discretion in imposing sanctions. We disagree with all of these assertions, save a portion of the third.

*The Magistrate Judge's Decision*

Pursuant to the Federal Magistrate Judge's Act, 28 U.S.C. § 636, a district court may designate a magistrate judge to decide any nondispositive pretrial matter. *Id.* § 636(b)(1)(A). A district court may reconsider a magistrate judge's decision on matters so designated and overturn it only if it is "clearly erroneous or contrary to law." *Id.* Freifeld and the Law Firm rely on our decision in *United States v. Curtis*, 237 F.3d 598 (6th Cir.2001), to argue that the trial court applied the wrong standard and used a *de novo* review. We remanded in *Curtis*, though, not because the district court applied the wrong standard, but because we could not tell what standard it used. *Id.* at 603–04. Here, it is obvious from the district court's opinion that she felt that the magistrate judge's decision was clearly erroneous for a number of reasons, not the least of which was the magistrate judge's failure to consider certain ethical standards the district court found controlling. Specifically, the district court concluded that the magistrate judge's failure to consider Freifeld's duty of confidentiality rendered the underlying order "contrary to law."

██ The district court was correct to conduct an evidentiary hearing, moreover,

despite Freifeld's objections to one. In *Conetta v. National Hair Care Centers, Inc.*, 236 F.3d 67 (1st Cir.2001), the First Circuit wrote that, although the Federal Magistrate's Act does not expressly allow the district court to take new evidence in non-dispositive matters referred to a magistrate judge, "it is not clearly forbidden either if there is good cause for revisiting the matter." *Id.* at 74. The court iterated that the case belongs to the district judge and that the Federal Magistrate's Act is designed to ensure that parties may have a pretrial ruling reconsidered where the ruling is based on error or mistake of law, and *not* to limit the power of the district judge. *Id.* Here, the court considered evidence submitted to the magistrate judge, and determined that the ethical issues needed further inquiry.

We agree that the magistrate judge did not consider Rule 1.6, so the district court was entitled to take evidence and decide on the application of that rule. Inherent power stems from the concept that courts have powers necessary to exercise their other powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 35, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "[C]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates . . . ."*Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). With regard to Rule 1.6, the district court invoked its powers to consider issues the magistrate judge had not. We find, moreover, that, once invoked, the district court correctly assessed that disciplinary rule and had the right to control attorney conduct before her by sanctioning violations of it.[3]

---

**3.** While we tend to agree with the district court that the magistrate judge's interpretation of the attorney client privilege and attendant principles of waiver was also clearly

erroneous in the circumstances presented here, we need not reach that issue because we find the district court's consideration of Rule

*Ethical Considerations*

■ When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client, and the elements of the attorney-client privilege we set forth in *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir.1998), are satisfied:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

To encourage candor in the attorney-client relationship, the lawyer must maintain confidentiality of information relating to the representation. *See* Michigan Rules of Professional Conduct 1.6, cmt. The ethical rule of confidentiality is closely related to the evidentiary rule of attorney-client privilege. Hazard, Geoffrey C., Jr., and Hodes, W. William, 1 The Law of Lawyering § 9.7 (3d. ed.2001). The difference is that confidentiality "applies to virtually all information coming into a lawyer's hands concerning a client, and forbids virtually all disclosures...." *Id.* The privilege is narrow in scope, invoked in response to an attempt to compel testimony, where the testimony sought is about information passed between lawyer and client. *Id.* The duty of confidentiality "directs lawyers not to disclose—voluntarily or otherwise, unless an exception applies, information that the lawyer has learned *about* a client, no matter where or how the information was learned." *Id.* Thus, if Rose's information was protected by attorney-client privilege, and Rose waived the privilege, its disclo-

sure by Freifeld would still be subject to his duty of confidentiality.

■ Flint and Rose cite several cases to support the proposition that Freifeld breached ethical duties when deposing Rose. *See, e.g., United States v. Moscony*, 927 F.2d 742, 750 (3d Cir.1991) (holding a conflict of interest arose when attorney loyalties were divided, and loyalties were divided when an attorney cross-examined former clients). Michigan Rule 1.6 allows disclosure of confidences and secrets with consent of the client "but only after full disclosure." Full disclosure is advising the client about the advantages *and disadvantages* of revelation in language the client can understand. Hazard at § 9.16. We cannot find where Freifeld gave full disclosure before laying bare Rose's confidences. Thus, we find that substantial evidence supports the district court's finding that Freifeld violated Rule 1.6.

*Sanctions Against Freifeld and the Law Firm*

The district court did not state under what authority it was imposing sanctions, though the court did clearly differentiate between its award of attorneys fees against Freifeld and the Law Firm and the imposition of a fine on Freifeld individually. Courts need specific statutory authority, the presence of bad faith, or the willful disobedience of a court order before they award attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). We stated in *Tiedel v. Northwestern Michigan College*, 865 F.2d 88, 93–94 (6th Cir.1988), that, absent Congressional authorization, federal courts may exercise inherent powers to award attorneys' fees in "narrowly defined circumstances." When an attorney or litigant has demon-

---

1.6 to have been both within the scope of her authority and, ultimately, correct.

strated bad faith in the conduct of litigation, the court has the inherent authority to assess an award of attorneys' fees. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Imposition of sanctions comes from the court's power to police itself, so that a court can vindicate its authority without resorting to a finding of contempt of court. *Chambers*, 501 U.S. at 46. If the district court uses its inherent powers to sanction, it must find that the questioned conduct constitutes or is tantamount to bad faith. *Id.* at 767. As we noted in *Scharer v. Plabell Rubber Products, Inc.*, 858 F.2d 317, 320 (6th Cir.1988). attorneys' fees have been awarded under inherent authority "in the interest of justice" with no finding of bad faith. *Id.*

■ In *First Bank of Marietta v. Hartford Underwriters Insurance Company*, 307 F.3d 501, 513 (6th Cir.2002), we discussed *Mann v. University of Cincinnati*, Nos. 95–3195, 95–3292, 1997 WL 280188 (6th Cir. May 27, 1997), in which we held that the conduct the district court found "tantamount" to bad faith was indeed bad faith, despite no express language in the district court's opinion. *Id.* Clearly, a district court has within its power the authority to consider ethical breaches occurring in the context of litigation under its auspices and to impose sanctions for such breaches. No magic words are necessary to support the imposition of sanctions where the record is sufficiently detailed and the evidence in that record supports the conclusion that sanctionable conduct, in fact, occurred.

A court must give notice and afford an attorney opportunity to be heard before imposing sanctions. *Wilson–Simmons*, 207 F.3d at 822. The district court must give parties facing sanctions minimal procedural protections, but not formal notice detailing the penalties or a full evidentiary

hearing. *Id.* A full evidentiary hearing is not needed when the court has sufficient relevant information, including pleadings or materials filed in the record, to decide. *Id.* at 823. Here, Freifeld and the Law Firm had ample notice that the district court was considering sanctions. On October 12, 2000, the district court ordered Rose and Freifeld to appear at a November 3, 2000 evidentiary hearing on Flint's and Rose's objections to the magistrate judge's order regarding the motion to strike, and also ordered Freifeld to produce for *in camera* review all notes and records regarding Rose. Even ignoring the notice Freifeld received by virtue of the motion to strike and evidentiary hearing in front of the magistrate judge, the district court certainly provided Freifeld with sufficient notice that it was going to hold its own hearing to consider the propriety of sanctions; the district court even telegraphed the depth of its concern with Freifeld's actions when it set the hearing date. Thereafter, the court held a fairly detailed hearing, making a full record of the proceeding and of its findings. Ultimately, we are satisfied that Freifeld and the Law Firm were afforded adequate notice and access to substantial judicial processes before sanctions were imposed upon them.

■ The final question is the reasonableness of the sanctions imposed. As to the attorneys' fees awarded to Flint and Rose, we find that the record supports the conclusion that the fees and costs incurred by virtue of the ethical breaches upon which the sanctions were based reasonably approximate the sums imposed by the district court. Accordingly, we find that the district judge acted within her discretion, and acted reasonably, in awarding $15,000 and $5,000 in attorney fees to Flint and

Rose, respectively.[4]

■ We find, however, that the additional $5,000 against Freifeld, payable to the Clerk of Court, was not reasonable in the face of the substantial fee awards otherwise imposed. In the past, this Court has expressed concern over payment of a fine into the court under Rule 11 where the procedural protections otherwise applicable to a criminal contempt finding are not strictly employed. *Scharer*, 858 F.2d at 321. We recently held, however, that a small fine payable to the court is acceptable in certain circumstances, even when summarily imposed. *In re Smothers*, 322 F.3d 438, 443 (6th Cir.2003). While we decline to draw a line demarcating where a fine ceases to be sufficiently small to fall within the bounds of *Smothers*, we are troubled by the size of the fine imposed upon Freifeld in this case. The district court did not provide any rationale for the fact or amount of the "additional sanction" she imposed upon Freifeld. We find that, in light of both the attorneys' fee awards imposed and the procedural status of the case (the sanctions were imposed post-settlement), the additional $5,000 was not reasonably related to the punitive and deterrent purposes of the sanctions.

Ultimately, we **AFFIRM** the district court's award of a total of $20,000 in attorneys' fees to Flint and Rose, payable by Freifeld and the Law Firm, but **VACATE** the $5,000 fine payable to the court as unreasonable in the circumstances.

### B. Pabst's Appeal
*Reach of the Injunction*

■ Pabst argues that the injunction could not bind him and that, accordingly, he could not be sanctioned for failure to follow it, because the Anti–Injunction Act, 28 U.S.C. § 2283, generally bars federal courts from entering orders which bar pending state court proceedings. *See, e.g., In re Dublin Sec., Inc. v. Hurd*, 133 F.3d 377, 380–81 (6th Cir.1997). While Pabst spends much time analyzing the Anti–Injunction Act and the district court cited authority analyzing whether and to what extent that Act limits a federal court's authority to protect the rights and obligations of the litigants before it, we find the Anti–Injunction Act inapposite. The district court did not purport to prohibit state court proceedings involving Flint and its employees and did not even prohibit counsel in such proceedings from eliciting, from Rose or otherwise, the very factual testimony she provided in this action. All the district court did was to prohibit the use of a deposition transcript which the court found was obtained unethically and in derogation of the protections afforded Rose under the law in the course of a litigation pending before her.

We find that this case is more accurately analyzed under Federal Rule of Civil Procedure 65(d) and those cases interpreting it and does not require parsing of the Anti–Injunction Act or the scope of any exceptions thereto.

Rule 65(d) provides that:
every order granting an injunction ... is binding only upon the parties to the action. their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them....

Our deepest concern with the relief fashioned by the district court is that it enjoins non-parties to the litigation in *Banner*. We have often reiterated the principle that injunctive relief should be no broader than necessary to remedy the harm at issue. *See, e.g., United States v. Miami Univ.*, 294 F.3d, 797, 816 (6th Cir.2002). In

**4.** Indeed, the court was quite temperate in her consideration of these serious matters.

*Blackard v. Memphis Area Medical Center for Women, Inc.,* 262 F.3d 568 (6th Cir.2001), we explained that Federal Rule 65(d) is based on the doctrine that "a decree of injunction not only binds the parties defendant but also those represented by them or subject to their control." *Id.* at 574 (quoting *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945)). To determine whether a person is "in active concert or participation with" an enjoined party, we look to the actual relationship between the two. *Id.* The third party is bound "if that party is identified with the named, enjoined party in interest, in 'privity' with it, represented by it or subject to its control." *Id.*

■ We hold that forbidding the use of the Rose deposition in the *Banner* case and forbidding its use by Pabst in other cases were both appropriate exercises of the district court's authority. We reach this conclusion because we find that Pabst was both in active concert and participation with Freifeld and the Law Firm, and had adequate notice of the details of the injunction to place him on notice of his obligations thereunder.

On this point, we note that Freifeld was the source of the copy of the deposition Pabst possessed and that Freifeld provided that transcript to Pabst for the precise purpose of enhancing Pabst's litigation posture against Flint, thereby encouraging Pabst's use of the very information Rose had disclosed to Freifeld in confidence. Pabst knew that Freifeld provided the deposition to him for the purpose of using the information provided by Rose against her employer. We find that these facts put Pabst in "privity" with Freifeld, at least as it relates to the subject-matter of the district court's injunction. *See Blackard,* 262 F.3d at 574 ("[t]o determine whether a person is one who acts in concert ... with the enjoined party, the court

must look to the actual relationship between the person enjoined and the person thought to be bound by the injunction"); *Black's Law Dictionary* 1079 (5th ed.1979) (the "concept of 'privity' pertains to the relationship between a party to a suit and a person who was not a party, but whose interest in the action was such that he will be bound by the final judgment as if he were a party"). Thus, while we agree that the district court's order may have been overbroad *as against the world in general,* we do not find it to have been overbroad as to Pabst.

*Contempt Orders and Sanctions Against Pabst*

■ We stated in *Blackard* that parties bound on its face by an injunction must follow it when it is in effect, even if it is later found erroneous. It is completely unacceptable for an attorney to defy an order of a federal court flagrantly and purposefully, even if the decision to do so is premised on a good-faith disagreement over the scope or validity of that order. *See N. Am. Coal Corp. v. Local Union 2262, United Mine Workers of Am.,* 497 F.2d 459, 465 (6th Cir.1974) ("[o]f course, even if the district court's injunction was invalid for the reasons we have outlined, it is settled law that it still must be obeyed until and unless it is overturned on appeal."). Pabst openly and admittedly chose to challenge the district court's order by disobeying it. Pabst did *not* file for modification of the order until after he was found in contempt and he did not await ruling from this Court vacating that order before he repeated his contemptuous conduct. With more civilized means of challenging a court order available, Pabst simply chose a course of flagrant defiance. Such defiance runs counter to acceptable attorney conduct and the efficient administration of justice. The two findings that Pabst was in contempt were not an abuse

of discretion, and we uphold them with an observation that such conduct is below that expected of an attorney admitted to practice in our courts.

The district court imposed sanctions, payable to the clerk of court, after finding contempt. In *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir.1994), we recognized the power of federal courts to impose civil or criminal sanctions on an attorney, but the court must look to both the proceeding and the relief granted to determine whether a contempt order is civil or criminal in nature. *Id.* Civil contempt sanctions are intended "to enforce compliance with court orders and to compensate injured parties for losses sustained." *Id.* Sanctions imposed "to vindicate the authority of the court by punishing past acts of disobedience" are criminal in nature. *Id.* Thus, an "unconditionally payable fine" for a contempt finding is criminal in nature. *Id.*

Several requirements must be satisfied before such a criminal contempt sanction may be imposed. The law requires four things: a finding that the individual violated a district court order; a finding that he did so deliberately; a finding that he so acted beyond a reasonable doubt; and notice, pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure, that failure to comply with the court's orders could result in a criminal sanction and that the court was considering the imposition of such a sanction. *See Smothers*, 322 F.3d at 441–42 (listing the four conditions for imposition of a criminal contempt sanction.).

■■■ In *Downey*, 30 F.3d at 686, we held that a conviction of criminal contempt without proper notice does not comport with the strictures of Rule 42(b). Here,

the district court did not initially give Pabst notice that he would be subject to criminal sanctions. The original notice for a hearing ordered Pabst to appear, but did not charge him with criminal contempt, nor even suggest he may be subject to punitive criminal sanctions for prior use of the Rose deposition. We conclude, accordingly, that the district court did not follow Rule 42(b) with respect to the first $1,000 contempt sanction imposed upon him. We, therefore, **REVERSE** the February, 2001, order imposing the $1,000 sanction (Appeal No. 01–1401), and **REMAND** for the district court to reconsider that sanction in accordance with this opinion.[5]

We find, however, that Pabst was *fully* on notice as of the January, 2002, sanctions order that his conduct would subject him to a finding of contempt and that a call to appear before the court in connection with that conduct would, in fact, be for the *precise* purpose of determining the propriety of such an award. The first hearing and first sanction, accompanied by the district court's explanation of her rationale, therefore, unequivocally put Pabst on notice that continued violations of the injunction order would neither be tolerated nor forgiven. We therefore **AFFIRM** the sanctions order that is the subject of the appeal in Case 02–1297.

*Recusal of Judge Roberts*

On appeal, Pabst requests that we find that Judge Roberts should have recused herself and that we remand with direction to assign a different judge. We review such decisions for abuse of discretion. *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 382 (6th Cir.1997). Under 28 U.S.C. § 455(a), recusal is warranted where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably

---

**5.** On this point, we reiterate that the first three prerequisites to the imposition of a con-

tempt sanction were clearly satisfied.

be questioned." *Union Planters Bank*, 115 F.3d. at 383 (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir.1993), *cert. denied*, 510 U.S. 1163, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994)). We have found no grounds for recusal.

*Sanctions on Appeal*

Flint and Rose move for sanctions in this appeal to punish Pabst for items in his brief they believe are frivolous. While the brief in question neither reflects exemplary legal writing nor, candidly, sufficient respect for the federal courts, it does not require further proceedings before us or additional sanctions. Thus, we **DENY** the motion.

### III. CONCLUSION

In Freifeld and the Law Firm's appeal (Case No. 01–1118), we **AFFIRM** the district court's finding that Freifeld breached ethical rules, and hold that it did not err in reviewing the magistrate judge's order. We also **AFFIRM** the imposition of the injunction as it applies to use of the deposition by Freifeld and the Law Firm. We **AFFIRM** the judgment imposing sanctions generally, and the sanctions order imposing a total of $20,000 in attorneys' fees specifically, but **REVERSE** the $5,000 fine payable to the court.

In Pabst's appeals, we **AFFIRM** the injunction to the extent it forbids Pabst from using the Rose deposition, and **AFFIRM IN–PART** the finding of contempt against Pabst (Case No. 01–1297), and **REVERSE IN–PART** the imposition of sanctions against Pabst (Case No. 01–1401). We **REMAND** for further proceedings, as appropriate.[6]

---

6. We do not *direct* the district court to conduct further proceedings; we merely find that further proceedings in Case No. 01–1401 may be appropriate. The district court is free to assess whether such proceedings are necessary in light of our other findings.