*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0240p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,
                          *Plaintiff-Appellee,*

          *v.*                                                    No. 07-6053

HERBERT S. MONCIER,
                          *Defendant-Appellant.*

─────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 07-00040—J. Ronnie Greer, District Judge.

Argued:  March 12, 2009

Decided and Filed:  July 8, 2009

Before:  DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Ralph E. Harwell, LAW OFFICES OF RALPH E. HARWELL, Knoxville, Tennessee, for Appellant.  Robert M. Reeves, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee. **ON BRIEF:**  Ralph E. Harwell, LAW OFFICES OF RALPH E. HARWELL, Knoxville, Tennessee, for Appellant.  Robert M. Reeves, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee. Stephen Ross Johnson, Wade V. Davies, RITCHIE, DILLARD & DAVIES, P.C., Knoxville, Tennessee,  Caryll S. Alpert, TENNESSEE ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, Nashville, Tennessee, for Amicus Curiae.

─────────────────

## OPINION

─────────────────

          KETHLEDGE, Circuit Judge.  Attorney Herbert Moncier appeals his conviction for criminal contempt relating to his conduct during a sentencing hearing before Judge Ronnie

1

Greer. Although we reject all but one of Mr. Moncier's arguments, that one requires us to vacate his conviction and remand for a new trial.

I.

A.

This case arises from Mr. Moncier's representation of three potential defendants—Michael Gunter, Michael Vassar, and Harold Grooms—in connection with a federal drug investigation in Tennessee. Gunter and Vassar were tried together in the Eastern District of Tennessee, but Grooms remained unindicted during the time relevant to this appeal. On March 17, 2006, Judge Ronnie Greer conducted a hearing on the question whether Mr. Moncier's representation of Gunter and Vassar presented a conflict of interest for him. That hearing ran more than five hours. During the hearing, Moncier accused the government of "scurrilous" behavior, accused Judge Greer and the assigned Magistrate Judge of bias, and talked over Judge Greer to the point where, for "the first time" since he had "been on this bench[,]" Judge Greer resorted to the gavel to restore order. Judge Greer eventually disqualified Mr. Moncier from his representation of Gunter, finding an unwaivable conflict of interest. Gunter and Vassar were thereafter jointly tried and convicted, with Mr. Moncier representing Vassar.

Mr. Moncier then proceeded to file 43 post-verdict motions on Vassar's behalf. They included: "Motion for Presenence [sic] Hearing Conference to Determine Disputed and Contraverted [sic] Sentencing Issues To [sic] For Which the Court May Be Disqualified From Making Factual Findings[,]" "Motion For An Order To The United States Attorney To Deliver To The Court Documents And Reports Subpoened [sic] For The Sentencing Hearing For The Defense To Inspect To Prepare For The Hearing[,]" "Motion To Sentence Under § 3553 And § 3553(A)(2)[,]" "Motion for Relief from Prosecutorial Sentencing Misconduct, Vindictiveness, Unconstitutional and Selective Guideline Sentencing Customs and Practices[,]" and "Third Motion for § 3553(a)(4)/Sentencing Guideline Departure/Variance: Unintended Post-*Booker* Consequences Pre-Mandatory Guideline Repeal of Parole Sentence Alternatives[.]" Judge Greer denied virtually all of the motions, which in numerous instances caused Mr. Moncier to file a "renewed" motion of essentially the same substance, which Judge Greer again denied.

Judge Greer scheduled Vassar's sentencing hearing for October 28, 2006, which was before the date on which one of Vassar's co-conspirators was scheduled to be sentenced. For tactical reasons, Mr. Moncier wanted the co-conspirator to be sentenced first; and he therefore moved to adjourn Vassar's hearing on October 19 and again on October 26, citing his preference regarding the sentencing sequence and otherwise asserting that he needed more time to prepare for the hearing. Judge Greer denied the motions, but adjourned the hearing anyway, to November 17—which still came before the co-conspirator's scheduled hearing—because another of his cases had created a conflict for the original hearing date. In the meantime, Mr. Moncier filed another motion to adjourn, which Judge Greer denied, and then yet another, which Judge Greer did not rule upon because it was filed the night before the hearing.

B.

When Vassar's sentencing hearing began on November 17, Mr. Moncier announced that he had an "emergency matter" to discuss with the court, namely, a potential conflict of interest arising from his simultaneous representation of Vassar and Grooms. When asked to identify the basis for the conflict, Mr. Moncier at first demurred, requesting that "he be permitted to present this to [another] district court judge that will not be making factual findings to my client[.]" Before long, however, Mr. Moncier allowed that the basis was that the government had told him the day before that Grooms had implicated Vassar in certain drug transactions. Mr. Moncier then spoke at considerable length about why he thought an "independent attorney" should be appointed for Vassar to discuss with him whether he wished to retain Mr. Moncier as his lawyer for purposes of his sentencing. Mr. Moncier also suggested that Vassar's sentencing hearing—*i.e.*, the one then underway—be adjourned pending the resolution of the potential conflict.

After taking a twelve-minute recess to consider the matter, Judge Greer denied Mr. Moncier's various requests. Judge Greer observed that "[t]o the extent, Mr. Moncier, that there is a possibility now that Mr. Vassar knows information about other people who may be clients of yours, you've known about that for months and months and months." Judge Greer also stated that 'I'm simply not willing to postpone this [sentencing hearing] on the basis that there now exists in your mind a conflict that should have been readily apparent to

you six or seven months ago." In response, Mr. Moncier stated that "I must request the court to permit me to withdraw from representing Mr. Vassar because *I cannot effectively advise Mr. Vassar as to how to proceed this morning at the sentencing hearing*[.]" (Emphasis added.)

Mr. Moncier then requested a bench conference out of Vassar's hearing, which Judge Greer reluctantly granted. During the conference Mr. Moncier asserted, among other things, that there was a "precalculated plan of the government . . . to sabotage Mr. Vassar's position" at the hearing; that "they [*i.e.*, the prosecution] don't want people to hire me to try jury trials"; that the government was attempting "to attack Herb Moncier"; and that "I'm not going to walk into this trap." When Judge Greer asked what he meant by the latter comment, the following exchange occurred:

> Moncier: I mean if I have to sit there and remain [mute], I will sit there and remain [mute].
>
> The Court: In other words, you wouldn't provide him a defense?
>
> Moncier: I can't provide him a defense. It would be an ineffective assistance of counsel to do so. Everybody is walking into a 2255 in this situation.

Mr. Moncier then continued:

> If my client has known something, as remote as it might be, that pertains to Harold Grooms, that is that Harold Grooms offered to give him some drugs, if he knows that, and if he understands that that is within these things that the government was wanting, that he need to know that. *He [i.e., Vassar] isn't going to tell me if Harold Grooms said that because he knows I represent Harold Grooms*.

(Emphasis added.)

At that point, Judge Greer expressed two concerns. First, he said, "Mr. Moncier, this is, I believe, the fifth time in two weeks that you've attempted to get this sentencing hearing continued. What's really going on here? What's going on?" To which Mr. Moncier responded: "What's going on here is that I think the government is trying to set me up. . . . [B]ecause I have tried a number of cases successfully, including this case, because I have the reputation of trying cases against the government and not doing what they want in this community, they're coming after me."

Second, Judge Greer stated that "the one thing that causes me the most concern about this is . . . your statement that because you represent Harold Grooms, your client won't tell you the truth; and if that's the case, I need to do something about that." Mr. Moncier then began to backtrack, but Judge Greer reiterated his concern and took a short recess to consider the issue. By that time the hearing had already consumed two and a half hours, all of which had been devoted to Mr. Moncier's potential conflict.

Upon returning, Judge Greer said he had given the conflict issue "a little more thought" and offered to "give each one of you an opportunity to briefly address it further, if you wish to do so." Mr. Moncier took that opportunity, speaking for nearly 15 minutes with little hindrance from Judge Greer. During that statement, Mr. Moncier reiterated his theory that the government had "set this up." But more important was Mr. Moncier's pirouette on the conflict issue; there was, it appears, not a conflict after all. In flat contradiction to what he had said an hour earlier, Mr. Moncier stated that "I had absolutely and I have today no reason to believe that I have [an] actual conflict of interest between Harold Grooms and Michael Vassar, none, and I don't"; and further that "Mr. Vassar has also instructed me that he wants to go forward with sentencing today." Mr. Moncier then stated, no less than three times, that "Mr. Vassar wants to address the court" regarding his choice of counsel. *Id.*

Judge Greer wanted to speak to Vassar as well. But first he had some words for Mr. Moncier:

> Mr. Moncier, you just made some statements about what you know about this court's attitudes about you and the way you do things. There have been a number of occasions when I have complimented you in the open courtroom on the success you've had in defending criminal defendants in this court. Contrary to what you might see as some disappointment on my part when you get an acquittal, that's not the case. I've never been disappointed or upset when you've gotten an acquittal in this court, nor have I expressed an overall dislike to the way you present your cases.
>
> What I have said to you on numerous occasions is that I do not like the lack of civility that you bring to cases; that I do not like the lack of candor that you often bring to cases; that I do not like the fact that you on occasion misrepresent facts before a jury or before a witness; that I don't like the aspersions you cast, the personal aspersions that you cast at times upon the professionals who oppose you, nor do I like the aspersions you cast upon the court at times. You know very well that I did not approve of comments you

made about the magistrate judge in this court in the pleadings you filed before this court. I do not like the fact that you'll make an argument before the jury that I sustained an objection to or, or instructed you not to make. That happened in Mr. Vassar's other case where I sustained an objection and you turned around and made the same argument again. That has absolutely nothing—none of that has absolutely anything at all to do with what Mike Vassar's sentence ought to be in this case.

You think the government is out to get you because you have success. You think the court is against you because you have success. Aside and apart from the egotistical implications that that statement contains, they're [sic] just simply wrong. I don't resent you the success you've had here. Every client—I've bent over backwards in this case from the very beginning to make sure that Mr. Vassar got the counsel of his choice in this case.

\*       \*       \*

It does, however, bother me in addition that you've told me in a side-bar conference this morning that if this hearing goes forward today, you intend to sit there at counsel table mute and render ineffective assistance of counsel of Mr. Vassar; and now you tell me that you're prepared to go forward, Mr. Vassar wants you to go forward. Those are the kinds of things, Mr. Moncier, that give me heartburn about your conduct. You can't have it both ways.

Judge Greer then attempted to speak to Vassar, as Mr. Moncier had suggested:

The Court:    Mr. Vassar, here's the court's concern. When we have this sentencing hearing I want your lawyer to ask whatever questions are necessary to ask to adequately present your case to this court. I don't want you represented by a lawyer who is reluctant to ask questions for—out of concern about what the answers might be as they relate to Harold Grooms. I don't want your lawyer to be in a position to where he is reluctant to call a witness for fear that the government might ask about Harold Grooms and he doesn't know what the witness is going to say. You understand what I'm saying?

Vassar:    Yes, sir.

The Court:    I want your lawyer's loyalty to be to you—

Vassar:    That's what I want, Your Honor.

The Court:    —and nobody else.

Vassar:    That's what I want.

The Court:    Now, you understand how those conflicts can arise in the context of this case with Mr. Moncier representing Harold Grooms and representing you at the same time?

| | |
|---|---|
| Vassar: | I understand. |
| The Court: | Okay. It's a very simple question then, understanding how those conflicts can arise, do you want Mr. Moncier to continue representing you in this case or do you want me to see if I can find somebody who has no connection with any other codefendant or potential codefendant in this case? |
| Moncier: | Once again, your honor— |
| The Court: | Mr. Moncier— |
| Moncier: | He makes— |
| The Court: | Mr. Moncier, you be quiet. |
| Moncier: | May I approach the bench? |
| The Court: | You may stand there and do what I told you to do until Mr. Vassar answers this question. |
| Moncier: | For the record, your Honor, I object without him having– |
| The Court: | Mr. Moncier, one more word and you're going to jail. |
| Moncier: | May I speak to my– |
| The Court: | Officers, take him into custody. We'll be in recess. |

C.

Judge Greer released Mr. Moncier less than an hour later, and stated that he would not summarily punish Mr. Moncier for criminal contempt under Fed. R. Crim. P. 42(c). Instead, at the request of Mr. Moncier's attorney, Judge Greer directed that the government formally charge Mr. Moncier with two counts of criminal contempt, pursuant to 18 U.S.C. §§ 401(1) and (3). Mr. Moncier thereafter moved to disqualify Judge Greer from the contempt trial, arguing that the charges "involved disrespect toward the court" within the meaning of Rule 42(a)(3). Judge Greer denied the motion.

Judge Greer presided over Mr. Moncier's contempt trial on April 24, 2007. The prosecution introduced the transcript of the November 17, 2006 hearing, and rested. Moncier then testified in his own defense, asserting that his recalcitrance was necessary to protect his client's rights. In a written decision five weeks later, Judge Greer found Moncier guilty of both charges. Judge Greer thereafter sentenced him to one year of probation and a $5,000.00 fine.

This appeal followed.

II.

A.

Mr. Moncier argues that his convictions should be reversed and the charges against him dismissed. Specifically, he argues that the evidence at trial was insufficient to support his conviction. Our review of this issue is limited to whether any rational finder of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The elements of criminal contempt are (1) that the defendant engaged in "misbehavior," (2) that the misbehavior obstructed the administration of justice, (3) that the misbehavior occurred in the presence of the court, and (4) that the defendant acted with "intent to obstruct." *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985).

The record permits a finding of these elements here. Mr. Moncier indisputably misbehaved at the November 17, 2006 hearing, and that misbehavior obstructed the court's efforts not only to proceed generally with Mr. Vassar's sentencing, but also specifically to ask Mr. Vassar whether he wished to retain Mr. Moncier as counsel. And there is no doubt that the Mr. Moncier's obstruction was intentional. Mr. Moncier essentially admits as much, but contends he had good reason for the obstruction—namely, as he testified at trial and now argues to this court, that he had an *ethical duty* to obstruct Judge Greer's questioning of his client. That contention is beside the point, however, for purposes of determining whether the record supports his conviction. It plainly did.

But the contention warrants comment in its own right. Mr. Moncier's contention, specifically, is that his "duty to confer and advise Vassar *necessarily include[d] potential obstruction of Judge Greer* questioning Vassar in the presence of the prosecutors and FBI[.]" *Moncier Br.* at 5 (emphasis added). The Tennessee Association of Criminal Defense Lawyers makes much the same contention in its *amicus* brief supporting Mr. Moncier. The idea appears to be that, had Mr. Moncier not thrown himself across the tracks on November 17, Mr. Vassar's constitutional rights would have been violated. And thus, we are told, it was appropriate, and even necessary, for Mr. Moncier, rather than Judge Greer, to take control of the courtroom.

To all of which there is a simple answer:  There is no right of revolution in a United States District Court.  The lawyer's duty is not to defy the judge's orders, but to follow them. It is true enough that judges, like other humans, will make mistakes, and that those mistakes will sometimes be to the detriment of a client's rights.  But that is what Circuit Courts exist to remedy.  "Lawyers are required to obey even incorrect orders; the remedy is on appeal." *In re Dellinger*, 502 F.2d 813, 816 (7th Cir. 1974).  We entirely agree with Judge Greer that "someone must be in control of what happens in a courtroom[,]" and that the someone is "the trial judge, not the lawyer for a criminal defendant nor the lawyer for the United States." *May 30, 2007 Opinion and Order* at 23.

We therefore reject Mr. Moncier's arguments for reversal of his conviction and dismissal of the charges against him.

B.

Mr. Moncier next argues that his conviction and sentence should be vacated, and the case remanded for trial before a different district court judge.  Mr. Moncier bases this argument on Fed. R. Crim. P. 42(a)(3), which provides that, "[i]f the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents."  Here, Mr. Moncier's refusal to allow Judge Greer to question his client was the final event giving rise to the charge of contempt.  In a contempt case, however, "the final event in an unfortunate chain of occurrences [cannot] be realistically considered apart from what went before." *United States v. Combs*, 390 F.2d 426, 430 (6th Cir. 1968).  We therefore consider whether Mr. Moncier's final recalcitrance was disrespectful towards Judge Greer when viewed in the context of the record as a whole.

Judge Greer himself commented several times on that record.  In addressing Mr. Moncier at the close of his contempt trial, Judge Greer stated that "the most bothersome aspect" of the case to him was "the accusations that have been made throughout the course of these proceedings that this court was somehow biased or prejudiced against either you or your client in the Vassar case; and as I indicated in the order [denying the motion to disqualify], those certainly are allegations that could have been found to be personally offensive to this court[.]"  Judge Greer also admonished Mr. Moncier, correctly, that "[i]t

doesn't make any difference who is sitting up here, the institution, the court, deserves to be treated with respect and decorum."

For two reasons, however, Judge Greer held that the charged contempt did not require his disqualification under Rule 42(a)(3). First, Judge Greer expressed a concern that, if construed to require his disqualification, the rule would "basically allow[] a criminal defendant to pick his or her trial judge" by acting contemptuously towards any judge whom the defendant did not want to preside over his or her case. That would be true, however, only with respect to the contempt charge, not for any underlying (and likely more serious) charge for which the defendant is prosecuted. And in any event the rule says what it says.

Second, the record makes clear that Judge Greer tried simply to rise above taking personal offense from Mr. Moncier's conduct towards him. In that regard, Judge Greer's finding that Mr. Moncier's conduct was not disrespectful towards him personally, in a manner requiring disqualification, can be attributed less to an error of judgment, than to an excess of magnanimity. We take a less forgiving view of Mr. Moncier's conduct; and we conclude that, fairly considered, it did involve disrespect towards Judge Greer within the meaning of the rule, with the ironic consequence that he gets a new trial.

That trial, however, should be unencumbered by any of the arguments in Mr. Moncier's brief to this court. We have considered all of those arguments, and with the sole exception of the one made under Rule 42(a)(3), we reject all of them on the merits.

Mr. Moncier's conviction and sentence are vacated, and the case remanded for trial before a different district court judge.