SUTTON, Circuit Judge,
concurring.
I join the court’s decision in full, including its conclusion that the district court abused its discretion when it invoked its inherent power to impose sanctions on defense attorney John Freeman for filing a frivolous motion. I write separately to express skepticism about a lower federal court’s power ever to use inherent authority, as opposed to the contempt power established by statute (18 U.S.C. § 401) and implemented by rule (Fed.R.Crim.P. 42), to punish a defense attorney in a criminal case for filing a frivolous motion.
Before moving forward with this point, let me take a few steps back. From the founding to the present, the federal courts have possessed “implied powers” that “are necessary to the exercise of all others.” United States v. Hudson, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812); accord Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). That inherent power extends to civil and criminal cases. See Chambers, 501 U.S. at 44, 111 S.Ct. 2123; Illinois v. Allen, 397 U.S. 337, 342-43, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). And that power would seem to include authority to sanction attorneys in criminal cases. When the Constitution established a Supreme Court and Congress later created the lower federal courts, those actions came with an implied delegation to allow the courts to formulate procedures for their cases, including a mechanism to control the lawyers before them. One cannot create a court without giving judges the power to control the courtroom. The First Congress recognized as much, creating a contempt power for civil and criminal cases that exists to this day. See Judiciary Act of 1789, ch. 20, § 17, 1 Stat. 73, 83; 18 U.S.C. § 401. In 1944, Rule 42 of the Federal Rules of Criminal Procedure was adopted to lay out a process for exercising the criminal-contempt power.
What intrigues me is not whether the lower federal courts, in the absence of this statute and rule, nonetheless would have power to sanction misbehaving criminal defense lawyers. They assuredly had that power from the outset as a necessary incident of creation, whether Congress had codified the common law contempt power in 1789 or not. My question is what remains of that inherent power today.
Congress’s Article III power to create the “inferior” federal courts includes the *307 lesser power to limit their authority. Because the lower federal courts “were created by acts of Congress,” the legislature may “limit[ ]” their “inherent power ... by statute and rule.” Chambers, 501 U.S. at 47, 111 S.Ct. 2123; accord Ex parte Robinson, 86 U.S. (19 Wall.) 505, 511, 22 L.Ed. 205 (1873). That explains why the lower federal courts may not use their inherent power to “cireumvent[ ]” or “thwart[ ] the purposes of the other sanctioning mechanisms” Congress has provided directly by statute or less directly through the Rules Enabling Act. Chambers, 501 U.S. at 51, 111 S.Ct. 2123.
Had this been a civil case, it would have been an easy case. A court’s use of inherent power to sanction the filing of Mr. Freeman’s (allegedly) frivolous motion could not be reconciled with the sanctioning regime already in place under the Federal Rules of Civil Procedure. In a civil case, a district court faced with sharp-elbowed litigation tactics may, indeed must, sanction attorney misconduct under Civil Rule 11, which requires attorneys to certify that any “pleading, written motion, or other paper” is
(1) “not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation”;
(2) “warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law”;
(3) based on “fact contentions [that] have evidentiary support or, if specifically so identified, will likely have evi-dentiary support after a reasonable opportunity for further investigation or discovery”; and
(4) “warranted” based on a “reaso-nabl[e]” belief (or a “lack of information”) if the lawyer or party is “denying] ... factual contentions.”
Fed.R.Civ.P. 11(b). The Rule spells out the procedural prerequisites for imposing a sanction (“notice and a reasonable opportunity to respond”), who may seek sanctions (opposing parties and the court), the types of sanctions available (monetary and nonmonetary) and the purpose and limits of a sanction (“limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated”). Fed.R.Civ.P. 11(c). Other rules, statutes and regulations grant courts permissive sanctioning authority to address related problems in civil cases. See Fed.R.Civ.P. 16(f), 26(g)(3), 37, 56(h); 18 U.S.C. § 401; 28 U.S.C. § 1927; see also 8 U.S.C. § 1229a(b)(6) (immigration proceedings); 37 C.F.R. § 2.120(g) (trademark proceedings); Fed. R.App. P. 38 (appellate proceedings); Fed. R. Bankr.P. 9011 (bankruptcy proceedings).
In the face of these carefully delineated regulations, it would be one thing to invoke inherent sanctioning authority to fill a gap in the Civil Rules, such as conduct outside the court’s jurisdiction. See Chambers, 501 U.S. at 36-37, 50-51, 111 S.Ct. 2123 (litigant and his attorney “attempted] to perpetrate a fraud on the court” by undertaking a series of bad-faith transactions to thwart the judicial process before filing lawsuit). It would be quite another to invoke that power to ease the burden of satisfying existing Civil Rules — to punish practices exempted by a Rule or that fall short of meeting a Rule’s standard for sanctionable conduct. See United States v. One 1987 BMW 325, 985 F.2d 655, 661 (1st Cir.1993); cf. Carver v. Bunch, 946 F.2d 451, 453 (6th Cir.1991) (local court rules “cannot conflict with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court”). Accordingly, had this been a civil case, a district court could not have used its gap-filling inherent *308 power to sanction Mr. Freeman. Any effort to sanction the lawyer would have to rise or fall based on the relevant rules and statutes already in place.
But this was not a civil case. In contrast to the many rules and statutes empowering the courts to impose sanctions in civil cases, the number of rules and statutes directed solely to attorney misconduct in a criminal case is: none. Even the contempt power authorized by § 401 and Criminal Rule 42 applies to misconduct in criminal and civil cases. See, e.g., Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 789-90, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); United States v. Moncier, 571 F.3d 593, 594, 598 (6th Cir. 2009). All we have is a void, not a gap, when it comes to the statutes and rules directed solely to attorney misconduct in criminal cases, leaving just one other power available — the contempt power — which applies to all federal cases.
What should courts infer from this categorical silence, from the absence of other statutes and rules applicable to sanctions in criminal cases? Does it mean that the contempt power is the only tool available to district courts to deal with attorney misconduct in criminal cases? Or does it mean that Congress and the Rules drafters assumed courts also could sanction attorneys in criminal cases based on inherent authority, whether used in ways that mirror the civil rules, ways that mirror inherent powers innovated in civil cases, see Chambers, 501 U.S. at 50-51, 111 S.Ct. 2123, or still other ways?
I lean toward the former view. There are good reasons to think Congress and the Rules drafters meant to treat civil cases and criminal cases differently when it comes to regulating attorney misconduct. To ensure that criminal defendants receive zealous advocacy, courts “generally tolerate arguments on behalf of criminal defendants that would likely be met with sanctions if advanced in a civil proceeding.” In re Becraft, 885 F.2d 547, 550 (9th Cir.1989). Surely the decision not to import Civil Rule 11 into the Criminal Rules, to take one example, was an intentional and sensible one. Otherwise, the risk of sanctions could chill legitimate, indeed constitutionally required, advocacy, and district courts could sanction litigation stances that are utterly appropriate in criminal cases. A frivolous plea of not guilty is one example of the latter. United States v. White, 980 F.2d 836, 843 (2d Cir.1992). A frivolous refusal to admit elements of a charged offense is another. See ABA Model Rule of Professional Conduct 3.1 (prohibiting lawyers from making frivolous arguments but permitting criminal-defense attorneys to “defend the proceeding [so] as to require that every element of the case be established”). What, moreover, if a prosecutor “sign[ed] an unjustified indictment,” keeping in mind the “doctrine of prosecutorial immunity”? White, 980 F.2d at 843. What if a court imposed monetary sanctions against the government, implicating its sovereign immunity and potentially amounting to a sanction greater than Congress allows for bad-faith prosecutions? See 18 U.S.C. § 3006A, Statutory Notes (allowing the assessment of costs against the government in a criminal case where “the position of the United States was vexatious, frivolous, or in bad faith”); United States v. Horn, 29 F.3d 754, 763-64 (1st Cir.1994).
Perhaps the Rules drafters could tailor a Civil-Rule-11-like sanctioning regime to the criminal setting. But they conspicuously and, one suspects, consciously have not done so. Neither has Congress done so by statute. Nor has the President done so by executive order. See Exec. Order No. 12,778, 56 Fed.Reg. 55,195, 55,197, 55,-200 (Oct. 23, 1991) (directing federal gov- *309 eminent attorneys to “seek sanctions against opposing counsel and opposing parties where appropriate” but exempting criminal cases). Sometimes flagrant inaction amounts to action, particularly where the nearly silent Criminal Rules stand side by side with the many Civil Rules authorizing sanctions. Not only would it be difficult to import many of the civil-sanctioning powers into the Criminal Rules, but the passage of more than three-quarters of a century since the Rules Enabling Act became law without the passage of any comparable rules suggests that the omission is no accident.
Perhaps the omission reflects something else — the difficulty of drafting sanctions rules for criminal cases and the resulting utility of allowing district courts to use an inherent-sanction power on a case-by-case basis. I do not doubt the former, but I cannot believe the latter is the answer. The reason drafting such rules presents a challenge is that the stakes of a criminal trial are so high. A fair trial is the objective in civil cases, but it is the overriding constitutional imperative in criminal cases. The notion that district courts have a free-floating inherent power to sanction frivolous legal positions taken by attorneys in criminal cases but not civil cases flips these priorities.
That leaves the best inference: Congress and the Rules makers meant to give the federal courts just one tool — the contempt power — to discipline attorneys in criminal cases. Here is how the statute and Rule lay out the power and the process. The statute says in full:
A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
(2) Misbehavior of any of its officers in their official transactions;
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
18 U.S.C. § 401. The statute covers civil and criminal contempt, a “somewhat elusive” distinction, Int’l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 830, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Generally speaking, civil contempt is used “to coerce future compliance with a court’s order” or to “compensate for the injuries” resulting from misconduct, In re Jaques, 761 F.2d 302, 305-06 (6th Cir. 1985), while criminal contempt is “imposed for punitive purposes” and does not “serve to compensate an aggrieved party or coerce a future action.” In re Chandler, 906 F.2d 248, 249 (6th Cir.1990); see also 3A Charles Alan Wright et al., Federal Practice & Procedure § 703 (4th ed.). In a criminal case, most if not all contempt citations will be punitive and backward-looking.
Rule 42 of the Federal Rules of Criminal Procedure spells out the process for criminal contempt. Unless the court personally “saw or heard the contemptuous conduct,” it must provide notice, allow a reasonable time to prepare a defense, and appoint an attorney to prosecute the contempt. Fed. R.Crim.P. 42(b), (a). When it comes to sanctions for attorney misconduct in criminal trials, that is all there is — § 401 and Rule 42 — and one wonders why the federal courts should not leave it at that.
Chambers, it is true, held that a federal court is not “forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.” 501 U.S. at 50, 111 S.Ct. 2123. *310 But Chambers was a civil, not a criminal, case, and there is a difference between the two. The conduct in Chambers that implicated Civil Rule 11, moreover, was intertwined with “bad-faith conduct ... beyond the reach of the Rules ... that only the inherent power could address.” Id. at 50-51, 111 S.Ct. 2123. In that setting, the Court reasoned, it would “foster extensive and needless satellite litigation” to require a district court to separate out the conduct forbidden by the Rules from conduct sanc-tionable only through the inherent power. Id. at 51, 111 S.Ct. 2123. When a court is faced with conduct not intertwined with other conduct outside the purview of the Rules, Chambers says that the court “ordinarily should rely on the Rules rather than the inherent power,” resorting to the latter only when “neither the statute nor the Rules are up to the task.” Id. at 50, 111 S.Ct. 2123.
Since Chambers, the Court has twice admonished lower courts not to use inherent power to sidestep the Federal Rules of Criminal Procedure. “Whatever the scope of [a court’s] inherent power, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure.” Carlisle v. United States, 517 U.S. 416, 426, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (prohibiting district courts from using inherent authority to grant motions for judgment of acquittal filed outside the time limit prescribed by Federal Rule of Criminal Procedure 29(c)); accord Bank of Nova Scotia v. United States, 487 U.S. 250, 254-55, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). The Rules represent the relevant Rules committees’ and Congress’s judgment about how best to balance competing values. In Bank of Nova Scotia, for instance, the district court tried to use its inherent power to disregard the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). 487 U.S. at 254, 108 S.Ct. 2369. In rejecting that effort, the Court reasoned that “[t]he balance struck by the Rule between societal costs and the rights of the accused may not casually be overlooked because a court has elected to analyze the question under the supervisory power.” Id. at 255, 108 S.Ct. 2369.
Just so here. Like Rule 52, § 401 and Rule 42 balance competing values: to deter and punish offensive conduct on the one hand yet to give criminal defense attorneys the space to represent their clients zealously on the other. The history of the federal contempt statute shows that the tradeoff is not a figment. The Judiciary Act of 1789 gave federal courts the “power ... to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority.” § 17, 1 Stat. at 83. A judge eventually abused this broad grant of power. In 1826, Judge James Peck, of the United States District Court for the District of Missouri, imprisoned and disbarred a lawyer for criticizing his opinion on appeal- — a remarkable, if mildly understandable, lapse in judgment. See Arthur J. Stansbury, Report of the Trial of James H. Peck 2-5 (1833); Benjamin H. Barton, An Article I Theory of the Inherent Powers of the Federal Courts, 61 Cath. U.L.Rev. 1, 44-45 & n.315 (2011). In response to public outcry over the judge’s action, Congress imposed new limitations on the federal courts’ contempt power. See Act of Mar. 2, 1831, ch. 99, § 1, 4 Stat. 487 (establishing the limitations that now appear in 18 U.S.C. § 401(1)-(3)). The next time an attorney criticized one of Judge Peck’s rulings on appeal, does anyone think the judge could have disregarded Congress’s limitations on the contempt power by invoking his inherent sanctioning authority? Of course not: a judge may not use inherent power to end-run a cabined power.
That leaves the question whether the conduct at issue here — the filing of a frivo *311 lous motion to harass a potential witness, so we assume — is the sort of behavior that falls within the purview of, and is thus subject to the limitations imposed by, § 401 and Rule 42. Yes, it seems to me. A criminal defense attorney’s conduct amounts to contempt if it satisfies four criteria: (1) it “must constitute misbehavior under 18 U.S.C. § 401(1)”; (2) it “must amount to an obstruction of the administration of justice”; (3) it “must occur in the court’s presence”; and (4) “there must be a form of intent to obstruct.” Chandler, 906 F.2d at 249. If a criminal defense attorney files a frivolous motion with no motive other than to obstruct proceedings or intimidate a witness, the contempt power potentially covers the conduct — and would be accompanied by the procedural protections of Rule 42, including the requirement that the attorney’s guilt be proved beyond a reasonable doubt. See In re Smothers, 322 F.3d 438, 442 (6th Cir. 2003).
Why didn’t the district court invoke that power here? It does not say. But the most likely explanation is that Freeman’s conduct fell short of what § 401 and Rule 42 require, perhaps because his improper motive could not be proved beyond a reasonable doubt. If so, that is just the sort of “circumvention]” of the Rules that the Court warns us not to permit. Carlisle, 517 U.S. at 426, 116 S.Ct. 1460; Bank of Nova Scotia, 487 U.S. at 254, 108 S.Ct. 2369. A court’s inherent power to sanction is not a second-division contempt power to be used when an attorney’s conduct is almost, but not quite, punishable under § 401 and Rule 42. If a court is to invoke its inherent power to punish attorneys at all in the criminal context, it must be in response to conduct categorically beyond the scope of the contempt power. In that case, a court resorting to its inherent power is not circumventing any limitations the Rules impose; it is addressing a situation not contemplated by the Rules at all.
The government calls our attention to a handful of cases in which other courts of appeals approved the use of inherent-power sanctions in criminal cases. But these cases illustrate our point. The government cites no case, nor have we found one, in which a court of appeals affirmed a district court’s use of its inherent power to impose sanctions on an attorney for filing a frivolous motion in a criminal case. The cited cases either reverse sanctions orders, see United States v. Gonzalez-Lopez, 403 F.3d 558, 564-67 (8th Cir.2005); United States v. Figueroa-Arenas, 292 F.3d 276, 279-82 (1st Cir.2002), or concern attorney misconduct unrelated to advancing legal arguments, see United States v. Kouri-Perez, 187 F.3d 1, 4-5, 9 (1st Cir.1999) (attorney made baseless ad hominem attacks on prosecutor, including an allegation that she was the granddaughter of former Dominican Republic dictator Rafael Trujillo); United States v. Wallace, 964 F.2d 1214, 1215-16, 1218 (D.C.Cir.1992) (attorney neglected to call witnesses to appear, forcing trial to be rescheduled); see also United States v. Romero-Lopez, 661 F.3d 106, 107-08 (1st Cir.2011) (attorney failed to show up for scheduled sentencing hearing); Bills v. United States, 11 Fed.Appx. 342, 342-43 (4th Cir.2001) (per curiam) (same). When it comes to court filings, Congress and the Rules makers struck a context-specific balance when they included Rule 11 in the Civil Rules and omitted any parallel sanction in the criminal context. The most natural inference to draw from the contrast is that, if courts wish to punish criminal defense attorneys for improper filings, they should satisfy the strictures of the contempt power, not rework this balance however they see fit under their inherent power.
*312 But inferences from silence, even seventy-five years of silence, contain risks of their own. Rather than take the position that lower federal courts may never invoke an inherent sanctioning power when it comes to frivolous filings in criminal cases, the better part of valor is to suggest that a district court tempted to invoke its inherent powers ought to resist the urge unless it can satisfactorily address these considerations:
1. Is there a relevant Criminal Rule? If so, why not invoke it?
2. Is there a Civil Rule covering the same conduct? If so, is it possible that the drafters of the Criminal Rules opted not to impose similar sanctions in criminal cases because the Civil Rule does not lend itself to the criminal context?
3. If neither the Criminal Rules nor the Civil Rules speak to the issue, should a court impose such sanctions on a case-by-case basis or urge the Advisory Committee on the Federal Rules of Criminal Procedure to invoke the deliberative and inclusive Rules Enabling Act process to consider the adoption of a new Rule? See Mark A. Kravitz, To Revise, or Not to Revise: That Is the Question, 87 Denv. U.L.Rev. 213 (2010).
4. If none of this gives a court pause and if imposing a criminal sanction for a frivolous filing remains consistent with the “restraint and discretion” appropriate for any exercise of inherent judicial power, Chambers, 501 U.S. at 44, 111 S.Ct. 2123, this is a rare case. And if the court of appeals upholds the sanction, it may be a unique one.