**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0640n.06

**No. 09-5227**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 18, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| In re: HERBERT S. MONCIER, )<br><br>　　　Petitioner-Appellant. ) | On Appeal from the United States District Court for the Eastern District of Tennessee |

Before:　　　BOGGS and GRIFFIN, Circuit Judges; BARZILAY, Judge.[*]

**BOGGS, Circuit Judge.** No means no. The suspended and oft-sanctioned Herbert Moncier does not seem to grasp this point. Moncier's case returns to the Sixth Circuit, this time as a result of his filing motions in the United States District Court for the Eastern District of Tennessee, after having been told repeatedly after his suspension by that court that he could not do so. The issues on this appeal are limited to two orders that Chief Judge Collier issued on January 16 and February 11, 2009. First, Moncier asserts that he was denied notice and an opportunity to be heard prior to the entering of these two orders; second, he asserts that Chief Judge Collier improperly received and considered ex parte information; third, he asserts that the district court exceeded its jurisdiction and authority; fourth, he alleges that the evidence does not support the district court's findings. All of these claims are without merit. We affirm the district court's orders.

---

[*]The Honorable Judith M. Barzilay, Senior Judge of the United States Court of International Trade, sitting by designation.

**I**

**A**

On April 29, 2008, Chief Judge Collier issued an order prohibiting Moncier from representing any clients and filing any documents with the United States District Court for the Eastern District of Tennessee. This order followed a lengthy history of Moncier filing frivolous pleadings and exhibiting contemptuous conduct in court.[1] Moncier appealed this suspension order, and we affirmed. *In Re: Herbert S. Moncier*, 329 F. App'x 636 (6th Cir. 2009).[2]

At the time of the suspension order, Moncier claims that he represented clients in 23 federal cases. Between May and September of 2008, Moncier filed numerous motions with the court regarding the suspension order, allegedly seeking to clarify the scope of what he could and could not do with respect to his cases. With each motion, the court placed further restrictions on Moncier. In September 2008, notices for a show cause hearing for failure to prosecute were issued by Judge Leon Jordan in three cases—*Stidham v. Hutchison*, 3:04-cv-139; *Harvey v. Evans*, 3:04-cv-192; and *Green v. Hutchison*, 3:05-cv-214—in which Moncier was previously counsel of record. Moncier filed various motions in these three cases, allegedly "to protect Moncier's employment contracts in those cases, to advise the Court as to the status of Moncier's appeal of Judge Collier's suspension

---

[1] For background, *see United States v. Moncier*, 571 F.3d 593, 594-98 (6th Cir. 2009).

[2] This court decided the appeal of the suspension order, as well as the case of *United States v. Moncier*, 571 F.3d 593 (6th Cir. 2009) (vacating the conviction for contempt of court), on July 8, 2009, six days after Moncier filed his appellant brief in the instant case.

order, and to prevent those cases from being dismissed." *Appellant Br.* at 8. In each case, Judge Jordan ruled that Moncier could not file those motions.

In *United States v. Oakley*, 3:07-cr-88, a magistrate judge ruled that Moncier could confer with new counsel appointed to represent Oakley, consistent with the suspension order. On October 22, 2008, Moncier "appealed the Magistrate-Judge's ruling to the District Court to make certain that he would not be in violation of Judge Collier's orders and that Moncier would not be violating a directive Moncier had received during his representation of Oakley." *Appellant Br.* at 8.

In another criminal case, Moncier claimed that newly appointed counsel requested that Moncier confer with the defendant prior to a trial. *United States v. Newman*, 3:07-cr-89. "Moncier had conflicting orders from Judge Collier and a Magistrate-Judge as to whether Moncier could confer with Ms. Newman or the attorney that had been appointed to act as elbow counsel for Ms. Newman." *Appellant Br.* at 10. On January 12, 2009, Moncier filed a motion, "seeking clarification regarding whether Moncier could comply with Ms. Newman's request to confer with her to prepare for her trial on January 16, 2009." *Ibid.*

**B**

This appeal is from two orders that Chief Judge Collier then entered. The first order was entered on January 16, 2009, as a result of Moncier filing the motions in *Oakley* and *Newman*. R. 90. Chief Judge Collier found that Moncier's filing of motions in these two cases violated the suspension order, and abused his authorization to act as a pro se litigant. The district court "deem[ed] it necessary to take additional steps to vindicate the Suspension Order." Monicer was ordered not to file any document in any case in the United States District Court for the Eastern

No. 09-5227
*In re: Herbert S. Moncier*

District of Tennessee without the prior written authorization of the Chief Judge of the district. The order extended not only to Moncier, but also to his attorney, Ralph E. Harwell (who represents Moncier on this appeal), or any other attorney acting on behalf of Moncier. The district court further ordered the clerk of court not to accept any pleadings from Moncier, or from Harwell or any other attorney acting on behalf of Moncier.

On February 6, 2009, Harwell filed with Chief Judge Collier a motion for leave to file a motion on behalf of Carl Seider, who had previously been represented by Moncier in *Seider v. Hutchinson*, 3:06-CV-215. R. 94. Harwell stressed that the motion was filed "at Mr. Seider's request and not at the behest of or on behalf of Hebert S. Moncier." Harwell sought permission to file the "attached pleading on behalf of Mr. Seider." Moncier also filed a request, pro se, for written authorization to file a pro se motion to intervene in *Seider v. Hutchinson*.

Chief Judge Collier was not pleased. In response to Harwell's motion, on February 11, 2009, the district court entered an order striking the motion for leave, and denied the request for permission to file the motion. R. 96. The court noted that Harwell "cannot do anything as Respondent's [Moncier's] agent that Respondent is prohibited from doing," and cannot act "as a 'front' for a suspended attorney."

This was not the first time Harwell had sought to act on behalf of Moncier's former clients. On September 2, 2008, Moncier moved to allow Harwell to file motions on behalf of Moncier's former clients in a civil case. R. 84. The brief—somewhat circuitously—was submitted from "Respondent [Moncier], through the undersigned [Harwell]" but was signed by Harwell "For

- 4 -

No. 09-5227
*In re: Herbert S. Moncier*

Respondent Herbert S. Moncier." The district court denied this motion on October 20, 2008, finding

that:

> [F]or the Court to authorize Mr. Harwell to file the motion would have the Court
> approving unethical conduct. Mr. Harwell represents Respondent. He does not
> represent the former clients. Mr. Harwell owes a duty of undivided loyalty to
> Respondent and must act in Respondent's best interest. The interest of the former
> clients are not parallel to those of Respondent and may even be in conflict with
> Respondent's interest in being reinstated to practice law in this district and in
> rehabilitating his reputation. Thus, the filing of any pleading by Mr. Harwell in a
> case of former clients of Respondent might have him engaging in unethical conduct
> which the Court is unable to authorize. Moreover, permitting Mr. Harwell to act on
> Mr. Moncier's behalf for the benefit of Respondent's former clients would also
> violate the Suspension Order. As the Court previously stated, "Assisting a suspended
> attorney in [representing clients] would at the very least have the member of the bar
> committing a serious ethical violation and perhaps would even be aiding and abetting
> the suspended attorney in disobeying the orders of this court, which could constitute
> criminal contempt of court" (Court File No. 71, p. 7). For Mr. Harwell to file a
> motion on behalf of former clients of Respondent where *obviously he is acting on
> behalf of Respondent* is a contempt of court and is unethical. Therefore, neither
> Respondent nor Mr. Harwell has any authority to act on behalf of Respondent's
> former clients in an Eastern District of Tennessee case (Court File No. 71) and this
> Court has no authority to authorize unethical conduct. Any other result contradicts
> the basic tenets of the attorney-client relationship. Only licensed practitioners who
> are chosen by clients to represent them can intervene and assert the rights of their
> clients in court. All other third parties must have standing in their own right and
> cannot act on behalf of others.

R. 86 (emphasis added). The court referenced this September 2, 2008 motion in its February 11,

2009 order.

Harwell was on notice that, because of the canons of ethics and the possibility of divided

loyalties, he was not permitted to file anything on behalf of Moncier's former clients. Harwell's

actions as a "front" were potentially unethical and exposed him to disciplinary proceedings. The

court warned that any further attempts by Harwell to file motions on behalf of Moncier would

- 5 -

result in the loss of electronic filing privileges and other appropriate sanctions. The district court also denied Moncier's pro se request. R. 95.

Harwell, on behalf of Moncier, timely appealed the January 16 and February 11 orders.[3] The February 11 order specifically addressed Harwell, and told him that he could not "do anything as Respondent's agent that Respondent is prohibited from doing." Although the case is styled *In re: Herbert Moncier*, Harwell, both as an attorney and as a party, is a subject of the February 11 order, and his conduct is also at issue before this court.

### III

First, Monicer and Harwell claim that they were denied a meaningful opportunity to be heard, as the January 16 and February 11 orders were entered without notice that the matters were under consideration. This claim is without merit. Chief Judge Collier issued order after order after order instructing Moncier not to engage in the practice of law in the United States District Court for the Eastern District of Tennessee. With each motion seeking clarification filed by Moncier, the district court expanded the prohibition. In federal courts, the maxim, "if at first you don't succeed, try, try again" does not apply. If at first you don't succeed, quit, or appeal. Don't persist in asking the same court for permission to do what has already been prohibited.

As this court noted in Moncier's last effort on appeal:

---

[3]The notice of appeal, R. 98, references orders entered on 1/16/09 (R. 90), 1/21/09 (R. 91), 1/26/09 (R. 92), 2/2/09 (R. 93), 2/9/09 (R. 95), and 2/11/09 (R. 96). Moncier's brief only references the 1/16/09 and 2/11/09 orders, so the appeal of the other orders is waived.

> There is no right of revolution in a United States District Court. The lawyer's duty is not to defy the judge's orders, but to follow them. It is true enough that judges, like other humans, will make mistakes, and that those mistakes will sometimes be to the detriment of a client's rights. But that is what Circuit Courts exist to remedy. "Lawyers are required to obey even incorrect orders; the remedy is on appeal." *In re Dellinger*, 502 F.2d 813, 816 (7th Cir. 1974). We entirely agree with Judge Greer that "someone must be in control of what happens in a courtroom[,]" and that the someone is "the trial judge, not the lawyer for a criminal defendant nor the lawyer for the United States."

*Moncier*, 571 F.3d at 599 (citations omitted).

Moncier and Harwell were on ample notice that Moncier could not file any motions in the United States District Court for the Eastern District of Tennessee as part of his representation of clients, without permission. He did so anyway. Twice. Chief Judge Collier's order, which was entered after it "c[a]me to the Court's attention that Respondent, Herbert S. Moncier, on January 12, 2009, filed motions in cases of two of his former clients," was wholly appropriate and complied with notions of fairness and due process required by our Constitution. This claim is without merit.

**IV**

Moncier and Harwell argue that Chief Judge Collier "acted on ex parte information to discipline Moncier by (1) relying on an unnamed, uncited case to 'gauge' Moncier's discipline and then denying Moncier the name, citation or location of that case; (2) considering unspecified 'surrounding circumstances' not reflected in the November 17, 2007 transcript; (3) considering sources of information from the Eastern District of Kentucky; and (4) relying on a secret decision of the judges in the EDTN to not follow *In re: Mitchell*, 901 F.2d 11 (3rd Cir. 1990) in Moncier's case." *Appellant Br.* at 20. (citations omitted).

Moncier claims that the January 16, 2009 order, which imposed additional restrictions on Moncier, "failed to comply with any of the provisions of EDTN 83.7 in imposing that new discipline on Moncier or 28 U.S.C. 401 and Fed. R. Crim. P. 42 regarding contempt of court" in that the district court relied on ex parte information. The January 16, 2009 order was premised on documents that Moncier filed in the United States District Court for the Eastern District of Tennessee in two other cases. The district court was permitted to take judicial notice that these briefs, which were public records, were signed by Moncier.

We are somewhat unclear exactly what process Moncier thinks is appropriate, though it seems he would have wanted notice and an opportunity to be heard about any ex parte information known to the court prior to imposing the punishment. In accordance with EDTN 83.7(b), Chief Judge Collier had issued an order to show cause on January 17, 2008 informing Moncier about the allegations against him. R. 1. Monicer was on notice of the charges against him, and he should also have been on notice about documents that he had filed in the two other cases. The district court had a sufficient basis to issue the order, independent of any alleged ex parte knowledge. This claim fails.

## V

Moncier and Harwell claim that Chief Judge Collier exceeded his authority by prohibiting them "any access to the Courts." *Appellant Br.* at 24. Essentially, they argue that the order suspended "Moncier from practicing law pursuant to his Tennessee law license regarding any issue that touches on federal law or speaking to others about matters that touch on federal law." *Ibid.* Further, "Moncier asserts that Judge Collier does not have authority to limit Moncier's access to the

Court's [*sic*] to protect his employment contract interest and fulfill his ethical duty to his clients."

*Id.* at 26.  This argument is without merit.

In the January 16, 2009 order, the following limitation was placed on Moncier:

Accordingly, Respondent, Herbert S. Moncier, is hereby **ORDERED** not to file any motion, pleading, affidavit, effort to intervene, or any other matter in any case in the Eastern District of Tennessee without the prior written authorization as to any and each motion, pleading, affidavit, effort to intervene, or other matter, of the Chief Judge of the Eastern District of Tennessee.

It confounds the mind how Moncier, as late as November 2008, still had not come to grips with the fact that he has been disbarred from practice in the United States District Court for the Eastern District of Tennessee.  To the extent that he *still* had clients with pending matters in that court, he could, *with the court's prior written authorization,* take steps to enable another attorney to take over the cases.  Nothing more.  The order did not purport to take any action with respect to Moncier practicing law outside the United States District Court for the Eastern District of Tennessee, or in state court.

Even after extensive warnings, Moncier took it upon himself to file motions without seeking prior authorization.  As Chief Judge Collier stated in September 2008—months prior to the January and February orders—Moncier had more than enough time to ensure his clients obtained other counsel—not Harwell, whose loyalties lay with Moncier:

Last, considering the length of time that has transpired since Respondent's suspension, the former clients have had more than ample time to comply with Judge Phillips' order.  The Court suspended Respondent from the bar of the Eastern District of Tennessee for a period of three to five years on April 29, 2008.  (Court File No.

69, "Suspension Order," *In re Moncier*, 550 F. Supp. 2d 768 (E.D. Tenn. 2008)). Upon the entry of that order, Respondent, as he was ethically obligated to do, would have immediately notified the former clients that he was no longer permitted to practice law in the Eastern District of Tennessee and could no longer represent them. Such communication surely would have taken place within the few days immediately following the Suspension Order, and no latter [*sic*] than the first few days of May. Respondent would also have informed the former clients they should retain other counsel as soon as possible. By the time of Judge Phillips' order on May 21, 2008, the former clients should have already obtained replacement counsel if they desired or were able to do so. Almost four months after the Suspension Order the former clients still had not obtained counsel so Judge Phillips issued the order that is the subject of this motion. Four months is a very long time to allow a case to sit idle and is an extraordinarily generous amount of time to allow someone to obtain counsel.

R. 86. Perhaps if Moncier was so concerned about his ethical duties to his clients, and their cases, he would have heeded the court's warnings, and stopped representing them.

**VI**

Finally, Moncier and Harwell contend that the evidence does not support Chief Judge Collier's findings that Moncier's pro se pleadings were "frivolous and vexatious." *Appellant Br.* at 29. On appeal, Moncier and Harwell argue that his motions in *Stidham*, *Harvey*, and *Green* were aimed at "protecting Moncier's interest in his employment contracts and satisfying his ethical duties to his [former] clients." *Ibid.*

Neither the January 16 nor the February 11 order found that Moncier's pro se pleadings were "frivolous" or "vexatious." The district court does cite one case that dealt with "imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Feathers v. Chevron U.S.A., Inc.*, 114 F.3d 264, 269 (6th Cir. 1998). Chief Judge Collier found in the January 16 order that he needed to take additional action in order to "diminish the risk Respondent [Moncier] will file

[pro se] additional motions or cases in violation of the Suspension Order." The court ordered Moncier "not to file any motion, pleading, affidavit, effort to intervene, or any other matter in any case in the Eastern District of Tennessee without the prior written authorization as to any and each motion, pleading, affidavit, effort to intervene, or other matter, of the Chief Judge of the Eastern District of Tennessee." The court's reasoning was premised on Moncier improperly filing motions pro se at all—not Moncier filing "frivolous" or "vexatious" motions. There was no judgment on the merits of the motion. Rather, the court objected that they were filed in the first place.

Consistent with the court's order, Moncier could have first sought the requisite permission of Chief Judge Collier to file notices with the court concerning the status of the cases, and his interests. He did not do so. Rather, he took it upon himself to file briefs directly with the court, in direct conflict with the court's order. If Moncier's intent was simply to protect his interest and satisfy his ethical duties, he should have done so ethically.

**VII**

The district court's January 16 and February 11, 2009 orders are AFFIRMED.