Harriette Williams DOWNEY, Plaintiff,

Mark A. Vander Laan, Attorney–
Appellant/Cross–Appellee,

v.

Michael A. CLAUDER, Defendant–
Appellee/Cross–Appellant.

Nos. 93–3504, 93–3547.

United States Court of Appeals,
Sixth Circuit.

Argued June 20, 1994.

Decided July 25, 1994.

Mark D. Tucker, Norton Victor Goodman (argued and briefed), Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for Mark A. Vander Laan.

James B. Helmer, Jr. (briefed), James B. Helmer, Jr., Robert C. Neff, Jr. (argued),

Helmer, Lugbill, Martins & Neff, Cincinnati, OH, for Michael A. Clauder.

Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

Attorney Mark Vander Laan maintains that the district court erred in holding him in contempt of court for failing to timely withdraw a copy of a civil complaint forwarded to the Cincinnati Bar Association. Michael A. Clauder cross appeals, contending that the court erroneously converted his motion for sanctions into a contempt proceeding. For the following reasons, we reverse the judgment of the district court.

The facts underlying this matter are largely undisputed. Harriette Williams Downey is the widow of James R. Williams, former head of The Western and Southern Life Insurance Company and co-owner of the Cincinnati Reds. Following Williams' death in 1986, Downey inherited an estate valued at over $43 million. For help in managing her affairs, Downey turned to her nephew-in-law, Michael A. Clauder, a lawyer licensed to practice in Ohio. Over the next few years, Clauder served as Downey's attorney and financial adviser.

On May 24, 1990, Downey filed suit against Clauder in federal court. In a three-count complaint, Downey alleged that Clauder had misappropriated assets from the estate, charged Clauder with breach of fiduciary duty and legal malpractice, and sought $27 million in damages. Jurisdiction was premised upon diversity of the parties.

The next day, Mark A. Vander Laan, counsel for Downey, forwarded a copy of the complaint to Edwin W. Patterson, III, Bar Counsel for the Cincinnati Bar Association. The letter of transmittal accompanying the complaint read as follows:

In accordance with D.R. 1–103, I would like to submit a copy of the Complaint which was filed yesterday in the United States District Court for the Southern District of Ohio captioned *Harriette R. Williams Downey v. Michael A. Clauder, et al.*, Case Number C–1–90–413. While

we are obviously in the early stages of litigation, we are prepared to cooperate in any investigation of the conduct set forth in the Complaint as may be appropriate.

Disciplinary Rule 1–103(A) of the Ohio Code of Professional Responsibility directs a "lawyer possessing unprivileged knowledge of a violation of DR 1–102" to "report such knowledge to a tribunal or other authority empowered to investigate or act upon such a violation." Disciplinary Rule 1–102, in turn, proscribes a lawyer's violation of any disciplinary rule and forbids attorney participation in illegal, immoral, or fraudulent conduct.

On November 20, 1991, Vander Laan, acting on behalf of Downey, filed a formal grievance against Clauder with the Cincinnati Bar Association. The grievance asserted that Clauder harassed Downey by repeatedly sending her written communications after she had dismissed him as her attorney. In large part, the grievance was distinct from the pending civil litigation.

Meanwhile, ongoing settlement discussions between Downey and Clauder finally reached fruition. During a December 19 settlement conference in the district judge's chambers, Clauder consented to judgment being entered against him on Counts One and Two of the complaint. He also agreed to execute a promissory note payable to Downey in the amount of $150,000. Downey, in turn, assented to the total resolution of her claims upon satisfaction of the promissory note.

On December 23, Clauder, having just received notice from the Bar Association of Downey's November 20 grievance, refused to execute the settlement agreement. To resolve the deadlock, the district court conferred with counsel for the parties via telephone late that afternoon. During the conference call, Clauder agreed to execute the settlement agreement if Vander Laan would withdraw the Bar grievance.

In accordance with the discussions, Vander Laan advised Hollis A. Moore, III, of the Cincinnati Bar Association's Grievance Committee by letter dated December 30 that he wished to withdraw "the complaint set forth in the November 20th letter." A few days later, Clauder's counsel notified Moore that the "litigation underlying Mr. VanderLann's

grievance has been resolved," and expressed his desire "that, under these circumstances, the Grievance Committee will consider this matter resolved and take no further action with respect to Mr. VanderLaan's November 20, 1991, grievance." As per the parties' agreement, the district court entered judgment in favor of Downey on December 30.

In May 1992, Clauder learned that the Grievance Committee was pursuing an investigation of the allegations contained in Downey's civil complaint despite the parties' December 30, 1991, settlement of the civil action. In response, Clauder filed a motion in the district court on May 29 seeking to "enforce" the settlement agreement.

On July 30, 1992, the district court granted Clauder's motion. 811 F.Supp. 338. The district court observed: "Mr. Clauder settled, in part, to avoid disciplinary proceedings. If only one of two grievances is withdrawn, the Cincinnati Bar Association will continue its investigation. If all grievances are withdrawn, the likely outcome is that the Cincinnati Bar Association will terminate its investigation." Concluding that Clauder intended the settlement agreement "to include the withdrawal of all grievances," the district court ordered Downey to withdraw the civil complaint filed with the Bar Association on May 25, 1990. The order did not specify a time period within which Vander Laan was required to act.

Immediately upon receipt of the court's order on August 3, 1992, Vander Laan arranged to have a copy of the order delivered to Bar Counsel Patterson. Then, on August 17, Vander Laan sent a letter to Patterson explaining the order and asking the Grievance Committee to consider any grievance against Clauder to be withdrawn.

In the meantime, the Cincinnati Bar Association forwarded a formal disciplinary complaint to the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio on August 4. Following review by a probable cause panel, the Board of Commissioners filed a formal complaint against Clauder on August 17.

Shortly thereafter, Downey advised the district court that Clauder had failed to turn

over $100,000 in recently received insurance proceeds to Downey and moved to enforce the settlement agreement. Clauder responded by filing a motion for sanctions. In addition to alleging that Downey's motion was frivolous, Clauder asserted that Vander Laan deliberately disobeyed the court's July 30 order by failing to notify the Bar Association promptly that all complaints against Clauder were withdrawn. According to Clauder, Vander Laan's delay resulted in the filing of the formal complaint against Clauder by the Board of Commissioners on August 17.

On December 9, the district court granted Downey's motion to enforce the settlement and ordered Clauder to transfer the insurance proceeds to Downey. Concluding that Vander Laan had failed to comply with its July 30 order in a timely manner, the district court also granted Clauder's motion for sanctions. As the district court reasoned:

> During Mr. Vander Laan's delay, charges were, indeed, filed against Mr. Clauder with the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio. By failing to comply promptly with this Court's Order without legitimate excuse, Mr. Vander Laan has allowed disciplinary proceedings to go forward against Mr. Clauder, which probably would have been dropped had he complied with this Court's Order.
>
> Consequently, we conclude that fairness requires Plaintiff's counsel, Mark Vander Laan, be held liable under 28 U.S.C. § 1927 (1992) for the attorney's fees and costs incurred by Mr. Clauder in defending the disciplinary proceedings against him.

At no time did the district court characterize its finding in terms of contempt.

On December 21, Vander Laan moved for reconsideration of the district court's order imposing sanctions. In support of his contention that the court's conclusion was based on faulty assumptions, Vander Laan submitted the affidavits of Bar Counsel Patterson and Board of Commissioners Secretary Jonathan W. Marshall. Both men confirmed that Vander Laan's "untimely" compliance with the district court's order did not "cause" disciplinary action against Clauder to proceed. In Patterson's words:

> Had Mark Vander Laan's letter to me of August 17, 1992, been received at any time prior to the time it was received on August 18, 1992, the Grievance Committee would not have deviated from its course of action, because even if Mrs. Downey became unavailable as a witness, there existed sufficient other evidence to support probable cause that Mr. Clauder had violated the Code of Professional Responsibility.

In light of this information, the district court vacated its December 9 order imposing sanctions and notified the parties that it would hold a hearing on Vander Laan's motion for reconsideration.

On March 10, 1993, the district court heard oral arguments regarding the motion. Throughout the hearing, counsel confined their arguments to whether Vander Laan should be sanctioned pursuant to 28 U.S.C. § 1927. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The district court never characterized the proceedings as a "contempt hearing" or indicated in any way that it was considering holding Vander Laan in contempt.

Nevertheless, the district court proceeded to hold Vander Laan in contempt of court shortly thereafter, concluding in an order dated March 24, 1993, that an attorney "does *not* have two weeks to determine whether to abide by a Court's order." According to the district court:

> This Court has found that Mr. Vander Laan did not cause the disciplinary proceedings against Mr. Clauder to continue; nevertheless, this Court has determined that Mr. Vander Laan did not comply promptly with its orders.
>
> People—especially lawyers—have to follow court orders. They have to follow court orders even if they believe that the order is in error and are planning to ap-

peal. Furthermore, people need to comply with a court's order promptly. We need not define exactly how fast a person must act—that probably depends upon the facts and circumstances of each case. However, we comfortably can hold that Mr. Vander Laan's failure to act for fourteen days in this case was not prompt compliance with this Court's order. A reasonably prudent attorney, let alone one of Mr. Vander Laan's caliber, would have taken some sort of appropriate prompt action.

Accordingly, we hold Mr. Vander Laan in contempt of court. We fine Mr. Vander Laan $5,000.00. This money shall be paid to the Volunteer Lawyers for the Poor, a non-profit corporation located in Cincinnati, Ohio.

\* \* \* \* \* \*

In conclusion, this Court wishes this incident had never arisen. We know that being held in contempt of court is not a pleasant experience. Nevertheless, we hope and expect Mr. Vander Laan to appear in this Court again, and to give the excellent representation to his clients in this Court that he has demonstrated in the past.

This timely appeal followed.

 The sole issue before this Court is whether the district court erred in holding Vander Laan in contempt of court. A federal court has the power to impose civil or criminal sanctions on an attorney who fails to comply with a lawful, specific court order. 18 U.S.C. § 401(3) (court may punish contempt of its authority, including resistance to its orders). As the same conduct may give rise to both civil and criminal contempt judgments, a reviewing court must look to the substance of the proceeding and the form of relief granted to determine whether a particular contempt order is civil or criminal in nature. *Hicks v. Feiock*, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988).

 The distinction between civil and criminal contempt lies in the purpose of the court's mandate. Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained. *International Un-*

*ion, United Mine Workers of Am. v. Bagwell,* —— U.S. ——, ——, 114 S.Ct. 2552, 2557–59, 129 L.Ed.2d 642 (1994); *United States v. Bayshore Assocs., Inc.,* 934 F.2d 1391, 1400 (6th Cir.1991). Criminal contempt sanctions, on the other hand, are imposed to vindicate the authority of the court by punishing past acts of disobedience. *Bagwell,* —— U.S. at ——, 114 S.Ct. at 2556–59; *Bayshore Assocs.,* 934 F.2d at 1400. Accordingly, a fine that is payable to "the complainant as compensation for damages caused by the contemnor's noncompliance" or that is contingent upon "performing the act required by the court's order" is civil in nature, while an unconditionally payable fine is criminal. *Bayshore Assocs.,* 934 F.2d at 1400 (quoting *Roe v. Operation Rescue,* 919 F.2d 857, 868 (3d Cir.1990)); *see also Hicks,* 485 U.S. at 633, 108 S.Ct. at 1430 (noting that a criminal penalty is "solely and exclusively punitive in character," while a civil penalty "is specifically designed to compel the doing of some act"). As the Supreme Court recently emphasized, "a 'flat, unconditional fine' totalling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine though compliance." *Bagwell,* —— U.S. at ——, 114 S.Ct. at 2558 (quoting *Penfield Co. v. SEC,* 330 U.S. 585, 588, 67 S.Ct. 918, 920, 91 L.Ed. 1117 (1947)).

 In light of these well established principles, the district court's order adjudging Vander Laan in contempt of court was criminal in nature. The court did not award compensation to Clauder or make Vander Laan's obligation to pay the fine contingent on a future violation of its orders. Instead, the court ordered Vander Laan to pay an unconditional fine of $5,000 as punishment for allegedly failing to comply with the court's July 30 order. Moreover, the fine was directed to a beneficiary of the court's choice, not to Clauder. This sanction was criminal in character. *In re Chandler,* 906 F.2d 248, 249 (6th Cir.1990) ("fine was clearly for criminal contempt because it was imposed for punitive purposes and did not serve to compensate an aggrieved party or coerce a future action").

As criminal contempt is "a crime in the ordinary sense," the Supreme Court has stressed that constitutional protections for criminal defendants "apply in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions." *United States v. Dixon,* — U.S. —, 113 S.Ct. 2849, 2856, 125 L.Ed 2d 556, 568 (1993); *Bagwell,* — U.S. at —, 114 S.Ct. at 2556–57. An alleged criminal contemnor is therefore entitled to notice of the charges against him and has the right to present a defense. *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925); *see also Bayshore Assocs.,* 934 F.2d at 1401 (noting that defendant must have notice of type of proceeding to which he is subject); *In re Chandler,* 906 F.2d at 250 (criminal contemnor is entitled to "notice and a hearing"). Federal Rule of Criminal Procedure 42(b) thus provides that nonsummary[1] criminal contempt:

> shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant, or on an application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

Fed.R.Crim.P. 42(b).

Despite the clarity of this rule and the elemental nature of the principle it articulates, the district court convicted Vander Laan of criminal contempt without notifying Vander Laan of the charges he faced. The court never characterized Vander Laan's conduct as contemptuous, never warned Vander Laan that he faced being held in contempt of court, and never issued an order to show cause. In fact, aside from the district court's final contempt order, the record is utterly devoid of any reference to contempt. Because "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks,* 485 U.S. at 632, 108 S.Ct. at 1429–30, Vander Laan's contempt conviction cannot stand.

Even absent such a procedural deficiency, the district court's judgment does not withstand appellate review. To warrant the imposition of criminal contempt sanctions, a party must willfully violate a specific, clear, and unequivocal court order. *See United States v. West,* 21 F.3d 607, 609 (5th Cir.1994) (court order must be "sufficiently definite or specific to support a contempt citation"); *In re Holloway,* 995 F.2d 1080, 1099 (D.C.Cir.1993) (Mikva, C.J., dissenting) (observing that "before an individual may be punished for contempt for violating a court order, 'the terms of such order should be clear and specific, and leave no doubt or uncertainty in the minds of those to whom it is addressed' ") (citing *In re Brown,* 454 F.2d 999, 1008 n. 49 (D.C.Cir.1971)), *cert. denied,* — U.S. —, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994); *United States v. Robinson,* 922 F.2d 1531, 1534–35 (11th Cir.1991) (to support a criminal contempt conviction, the government must prove that the defendant willfully violated "a lawful order of reasonable specificity"). Here, the district court's July 30 order was hardly a model of clarity: it neither specified a date by which Vander Laan was to contact the Grievance Committee, nor commanded Vander Laan to act immediately. Moreover, there is no evidence that Vander Laan acted "with a willfulness that 'implies a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation.' " *In re Chandler,* 906 F.2d at 250 (quoting *TWM Mfg. Co. v. Dura Corp.,* 722 F.2d 1261, 1272 (6th Cir.1983)). Instead, Vander Laan conscientiously attempted to comply with the court's order by forwarding a copy to Bar Counsel Patterson immediately upon receipt, then sending a letter to Patterson shortly thereafter specifically asking the Grievance Committee to consider any grievance against Clauder to be withdrawn. Because a careful

---

1. As the "conduct constituting the contempt" was not "committed in the actual presence of the court," the contempt charge against Vander Laan was inappropriate for summary disposition under Federal Rule of Criminal Procedure 42(a). Fed.R.Crim.P. 42(a); *In re Chandler,* 906 F.2d at 250.

review of the record convinces us that Vander Laan did not willfully disobey a specific court order, we must reverse the district court's judgment.

 Finally, the district court lacked the authority to enter its July 30 order enforcing the settlement agreement. In ordering Vander Laan to withdraw the complaint filed with the Bar Association, the district court relied on its "inherent power to enforce settlement agreements." The Supreme Court recently recognized, however, that federal courts do not possess such inherent authority. *Kokkonen v. Guardian Life Insurance Co. of Am.,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). As the enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit," a claim regarding breach of such an agreement "requires its own basis for jurisdiction." *Id.* at ——, 114 S.Ct. at 1676. Because the district court here failed to retain jurisdiction over enforcement of the agreement when entering judgment, Clauder's breach of contract claim was properly addressed in a separate proceeding.

For the foregoing reasons, the judgment of the district court is reversed.