<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
File Name: 18a0434n.06

Case No. 17-4056

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID M. CLAPPER, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| CLARK DEVELOPMENT, INC., *et al.*, | ) | OHIO |
| | ) | |
| Defendants; | ) | |
| | ) | |
| BRENT L. ENGLISH, | ) | |
| | | |
| Appellant. | | |

BEFORE: BOGGS, SILER, and SUTTON, Circuit Judges.

SILER, Circuit Judge. Attorney Brent English represented an ancillary party in the underlying foreclosure proceeding on a limited basis. He failed to appear at a hearing for David Bruno, his client, and then failed to appear at a subsequent hearing to show cause why he was absent at the first hearing. His excuse? A conflicting state court trial, which English said was scheduled before his obligation to appear in federal court arose. The district court rejected English's explanation, held him in contempt, and assessed a $500 fine. For the following reasons, we VACATE the district court's contempt order and REMAND for further proceedings before a different district judge.

I.

To borrow from the district court, this case has a "long and tortured history." And this appeal is only tangentially related to the underlying dispute. In 2009, David Clapper and Huntington National Bank (HNB), among others, foreclosed on a condominium complex constructed by Clark Development. *Clapper v. Clark Dev., Inc.*, Nos. 14-3500/14-3770, 2015 WL 13688415, at *1 (6th Cir. Apr. 29, 2015) (per curiam). During the foreclosure proceedings, nonparty David Bruno, an officer of Clark Development and the president of the condominium association, interfered with the court-appointed receiver's efforts to sell the property. *Id.* The district court held Bruno in contempt and ordered him to pay a total of approximately $158,000 in fees to the receiver and HNB. *Id.* Bruno, by this time proceeding *pro se*, filed a series of post-judgment motions, variously seeking to vacate the foreclosure and contempt orders, sanctions, and recusal of the district judge. *Id.* The district court denied all of Bruno's motions and instructed him "not to file any further motions in this matter and [to] pursue relief through his appeal." *Id.* (emphasis removed).

On appeal, we held that Bruno waived his challenges to the contempt order because he failed to supply a transcript of the contempt hearing, thereby depriving us of a meaningful opportunity to review the record. *Id.* at *2-3. We also concluded that the district court did not abuse its discretion by requiring Bruno, who filed nine meritless motions within a six-week span, to request leave before filing additional motions. *Id.* at *3. Finally, in a separate action, we denied Bruno's petition for a writ of mandamus. *In re Bruno*, No. 14-3986 (6th Cir. Jan. 5, 2015) (per curiam).

In early 2015, HNB was seeking to collect on its judgment against Bruno. The district court ordered Bruno to appear at a debtor's examination scheduled for February 18. The order

also required Bruno to provide certain financial documents to HNB seven days prior to the examination. On February 17, just one day before the debtor's examination was to occur, attorney English entered a limited appearance on Bruno's behalf and moved for a continuance. The district court denied the motion and Bruno appeared for the examination. However, Bruno failed to turn over the vast majority of documents the court had ordered him to produce, so HNB moved for an order requiring Bruno to show cause why he should not again be held in contempt, and also moved to reconvene the debtor's examination. On September 15, the district court granted both motions and set a show-cause hearing for October 21, with the reconvened debtor's examination to follow immediately thereafter. The court again ordered Bruno to turn over his financial records to HNB prior to the examination, this time by October 7.

By October 14, Bruno had not complied with the court's order to disclose his financial records. On October 17, English, on Bruno's behalf, filed a motion to continue the October 21 show-cause hearing and debtor's examination. English asserted that Bruno was scheduled to undergo medical procedures in New York that would require him to miss the hearing. Additionally, English said he was personally unavailable on October 21 because he was scheduled to appear in state court for a civil jury trial beginning on October 19. Bruno later submitted an affidavit, stating that he understood that English would only represent him further if the continuance motion was granted. HNB opposed the continuance motion, citing its last-minute nature, Bruno's prior attempt to secure a late continuance, and the fact that English did not enter his appearance in the state court matter until October 18. The district court denied Bruno's motion by way of a marginal notation on the docket "for the reasons set forth in the opposition."

Despite the scheduled medical procedure, Bruno did appear at the October 21 proceedings, but English did not. With English absent, the court declined to proceed with Bruno's show-cause

hearing and debtor's examination, and reset those matters for October 29. Additionally, the court ordered English to appear on October 29 and show cause why he should not be held in contempt for failing to attend the October 21 proceedings. Last, the court warned that the show-cause hearings and debtor's examination would not be continued.

Nevertheless, on October 26, English moved to continue his own show-cause hearing, again citing the state court trial as the reason for his unavailability. That motion followed English's conversation with the state judge, who declined to delay the state trial at that time. Predictably, English's continuance motion was denied, as was his motion for reconsideration. English met with the state judge again on October 28, informed him that the district court had refused to continue the show-cause hearing, and asked him to contact the district judge to see if they could resolve the scheduling conflict. The two judges spoke on the phone, but were unable to reach an agreement. English asked the state judge to recess the trial so he could attend his show-cause hearing the next morning, but he refused.

On the morning of October 29, the date of his show-cause hearing, English moved to withdraw as Bruno's attorney. The court entered an order stating that English's motion to withdraw did not alter his obligation to appear at his own hearing.

English failed to appear, and the district court issued a warrant for English's arrest. U.S. Marshals arrested English in the state courthouse and delivered him to the federal district court on the afternoon of October 29, whereupon the court held the show-cause hearing.

English testified with the benefit of counsel. Much of his testimony reiterated what he had already stated in his written filings. English explained that his involvement in the state court case began on October 11, when he received a call from another attorney, Orville Stifel, who was counsel of record for three parties to that proceeding. Due to Stifel's severe hearing loss, and his

co-counsel's medical emergency, Stifel asked English to assist him at trial. According to English, Stifel mistakenly told him that the trial would commence on October 26, not October 19. When English learned on October 17 that the trial would conflict with Bruno's October 21 hearing, he sought a continuance in federal court. He admitted, however, that he did not seek a continuance of the state court trial prior to its commencement. Further, English did not make the state judge aware of the scheduling conflict until October 26, three days before his own show-cause hearing was scheduled. The state judge eventually denied English's request to adjourn the trial so English could attend his show-cause hearing.

During his testimony, English also represented that he had never before been ordered to show cause in a matter and that he had "never, ever been disciplined in any manner." However, upon cross-examination by HNB, English admitted that he had previously been held in contempt by a state municipal judge, and that his contempt citation was upheld on appeal.[1] English also conceded that he had never called HNB's counsel to seek an extension before filing his various motions to continue. The district court then conducted its own questioning of English, which essentially covered the same ground as the previous examinations and written filings.

The district court held English in contempt by way of a written order. The court found that English's rationale for not requesting an earlier continuance in state court was "less than compelling" and characterized his testimony as "misleading and evasive." Particularly troubling

---

[1] In that case, English was found in criminal contempt and fined $250 as a result of his conduct during a trial in municipal traffic court. *In re Contempt of English*, No. 90417, 2008 WL 2834082 (Ohio Ct. App. July 24, 2008). English, the defense attorney, clashed with the trial judge on multiple occasions throughout the proceedings. *Id.* at *1-4. The trial court characterized English's behavior as "pointing, shouting, jumping, stomping his feet[,] and otherwise disrespectful conduct." *Id.* at *4. The state court of appeals upheld the municipal court's finding of contempt, saying that by "repeatedly argu[ing] with the court [and] characterizing (and often mischaracterizing) the court's ruling in dramatic, argumentative fashion," English "undermined the court's authority." *Id.* at *5.

to the court were English's initial omission of his previous state court contempt finding and his attempts to downplay the conduct at issue in that case. "Rather than appear[ing] with a conciliatory tone or an apologetic one," the court observed, "English remained defiant and combative during his testimony." Exercising its power under 18 U.S.C. § 401, the court held that English "fell woefully short of taking all the reasonable steps within his power to comply with the Court's order that he appear," and imposed a $500 fine and awarded costs and fees to HNB.

English filed his first notice of appeal. We dismissed English's appeal because, at the time the appeal was taken, the district court had not yet ruled on English's challenge to HNB's bill of costs and fees. *Clapper v. Clark Dev., Inc.*, No. 15-4386, at *1-3 (6th Cir. Jul. 13, 2016) (per curiam).

Back in the district court, English moved to vacate the court's contempt finding. By this time, the litigation between HNB and Bruno had been settled. English noted that HNB did not object to his motion and no longer wished to collect the costs and fees that the court awarded in its contempt order. The court denied English's motion, but "decline[d] to impose the costs and fees incurred by [HNB] related to English's contempt." This appeal followed.[2]

## II.

We review the district court's decision to hold a party in contempt for an abuse of discretion and "will only reverse if the district court relied upon clearly erroneous findings of fact, improperly

---

[2] In accordance with its decision not to seek costs and fees below, HNB declined to participate in this appeal. The only brief filed in this matter is English's.

applied the governing law, or used an erroneous legal standard." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (citation and internal quotation marks omitted).

III.

A.

English's central contention is that the district court failed to afford him the procedural and substantive protections owed to persons accused of criminal contempt. The district court did not clearly state whether it was holding English in criminal or civil contempt. Our first task, then, is to determine the nature of the district court's contempt order.

Federal courts derive their contempt power from 18 U.S.C. § 401. In pertinent part, that statute provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." *Id.* § 401(3). Contempt comes in two varieties, civil and criminal. "The distinction between civil and criminal contempt lies in the purpose of the court's mandate. Civil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained." *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994) (citations omitted). In contrast, "[c]riminal contempt sanctions . . . are imposed to vindicate the authority of the court by punishing past acts of disobedience." *Id.* (citations omitted).

This distinction carries with it a substantive difference. In nonsummary criminal contempt proceedings,[3] "[a]n alleged criminal contemnor is . . . entitled to notice of the charges against him

---

[3] A court "may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies." Fed. R. Crim. P. 42(b). Because English was punished, in part, for twice failing to appear—conduct occurring outside the presence of the court—this provision of Rule 42 does not apply. *See In re Chandler*, 906 F.2d

and has the right to present a defense." *Id.* at 686 (citing *Cooke v. United States*, 267 U.S. 517, 537 (1925)); *see* Fed. R. Crim. P. 42(a). Further, proof must be beyond a reasonable doubt. *In re Smothers*, 322 F.3d 438, 442 (6th Cir. 2003). In civil contempt proceedings, the procedural protections provided for in Rule 42(a) do not apply, and proof need be only by clear and convincing evidence. *See CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015).

To "decid[e] whether a proceeding before a lower court refers to civil or criminal contempt, the appellate court is required to look to the purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below." *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1401 (6th Cir. 1991) (quoting *In re Kave*, 760 F.2d 343, 351 (1st Cir. 1985)); *see also Downey*, 30 F.3d at 685 (citing *Hicks v. Feiock*, 485 U.S. 624, 631 (1988)) (courts "must look to the substance of the proceeding and the form of relief granted"). Here, the district court appears to have viewed its contempt sanction as civil, rather than criminal, because it recited the "clear and convincing evidence" standard used in civil contempt proceedings. Further, one factor the district court considered in assessing its sanction was the cost and inconvenience suffered by HNB's counsel because of English's failure to appear, which suggests that the court was trying to compensate HNB for its wasted time.

However, the flat $500 fine levied against English—the only sanction at issue in this appeal—appears to have been punitive in nature. Besides the cost and inconvenience to HNB, the district court also considered English's pattern of requesting last-minute continuances on Bruno's behalf and English's failure to acknowledge and apologize for his misconduct. These factors suggest that the $500 fine was designed "to vindicate the authority of the court," which is the

---

248, 250 (6th Cir. 1990) (holding that contempt arising from failure to timely appear in court is not appropriate for summary disposition).

purpose of criminal contempt sanctions. *Bayshore*, 934 F.2d at 1400 (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)).

Even more compelling, the Supreme Court has stated that "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (citation and internal quotation marks omitted). Nothing in the record indicates that the district court afforded English an opportunity to purge the fine through future obedience with the court's orders. To the contrary, following English's untimely appeal to this court and HNB's indication that it no longer sought to collect its costs and fees, the district court denied English's motion to vacate the contempt order.

On at least one occasion, we have concluded that a finding of contempt and an unconditional fine levied against an attorney who failed to appear for a trial was civil in nature. *In re Jaques*, 761 F.2d 302, 305-06 (6th Cir. 1985). However, the district court in *Jaques* "not only stated that the purpose of Jaques' fine was remedial and compensatory, but fashioned the fine so as to do no more than compensate the injured parties for their actual damages." *Id.* at 306. Conversely, in *Chandler*, we found that a $95 fine levied against an attorney who was ninety-five minutes late to court "was clearly for criminal contempt because it was imposed for punitive purposes and did not serve to compensate an aggrieved party or coerce a future action." *In re Chandler*, 906 F.2d 248, 249 (6th Cir. 1990); *see also Smothers*, 322 F.3d at 441. Although the district court's fine against English was not handed down summarily, as in *Chandler* and *Smothers*, it was still designed to punish English for his past misconduct, rather than to coerce future compliance. Thus, the district court's contempt order was of the criminal variety, and English was entitled to the procedural and substantive protections that flow from that designation.

B.

Because "criminal contempt is 'a crime in the ordinary sense,' the Supreme Court has stressed that constitutional protections for criminal defendants 'apply in nonsummary criminal contempt prosecutions just as they do in other criminal prosecutions.'" *Downey*, 30 F.3d at 686 (quoting *Bagwell*, 512 U.S. at 827; *United States v. Dixon*, 509 U.S. 688, 696 (1993)). Further, when the alleged contempt is inappropriate for summary adjudication, the procedural requirements of Federal Rule of Criminal Procedure 42(a) must be followed. *Smothers*, 322 F.3d at 441. Here, owing to its apparent misclassification of its contempt order as civil, rather than criminal, the district court erred at least two ways—one substantive, and one procedural.

The district court substantively erred by failing to establish English's guilt beyond a reasonable doubt. "[T]o sustain a criminal contempt conviction falling under [18 U.S.C. § 401(3),] . . . [f]irst, the court's 'writ, process, order, rule, decree or command' must be resisted or disobeyed." *Id.* "Second, the act of disobedience or resistance must be 'a deliberate or intended violation, as distinguished from an accidental, inadvertent[,] or negligent violation.'" *Id.* at 441-42 (quoting *Chandler*, 906 F.2d at 250). This *mens rea* element "may . . . be 'inferred if a lawyer's conduct discloses a reckless disregard for his professional duty.'" *Id.* at 442 (quoting *United States v. Delahanty*, 488 F.2d 396, 398 (6th Cir. 1973)). "Third, the 'deliberate or intended' violation needs to be proved beyond a reasonable doubt." *Id.* (citation omitted).

However, instead of applying the reasonable doubt standard, the district court recited the clear and convincing evidence standard applicable in civil contempt cases. And after reciting that standard, the court simply stated that "the evidence overwhelmingly supports a finding that English should be held in contempt." But "the Due Process Clause requires that a defendant must be convicted of every element necessary to constitute the crime beyond a reasonable doubt." *Wofford*

*v. Straub*, 27 F. App'x 517, 520 (6th Cir. 2001) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

In *Sullivan v. Louisiana*, 508 U.S. 275, 278-80 (1993), the Supreme Court held that reversal is automatic in the absence of a jury verdict finding the defendant guilty beyond a reasonable doubt, no matter the strength of the prosecution's evidence. That logic applies with equal force where, as here, the defendant was adjudicated guilty of criminal contempt at the conclusion of what amounted to a bench trial. By using the lesser clear and convincing evidence standard to levy a criminal contempt sanction against English, the district court applied an erroneous legal standard and therefore abused its discretion. *See Gascho*, 875 F.3d at 800.

Further, the district court procedurally erred by failing to appoint a disinterested attorney to prosecute English's case. Rule 42(a)(2) specifies that "[t]he court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt." This provision was added as part of a 2002 amendment that sought to make clear that Rule 42(a) "envisions that a disinterested counsel should be appointed to prosecute the contempt." Fed. R. Crim. P. 42, Advisory Comm.'s note to 2002 amend.

Following Rule 42's 2002 amendment, we have not addressed whether the appointment of a neutral prosecutor is a necessary condition to upholding a criminal contempt conviction. However, other authority suggests that "[i]f the court does not appoint an attorney but assumes the prosecutorial role itself, the contempt conviction must be reversed." 3A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Crim. § 709 (4th ed. 2018). The Seventh and Fourth Circuits have both reversed criminal contempt findings when the district court failed to appoint an attorney to prosecute the case. *In re Troutt*, 460 F.3d 887, 894 (7th Cir. 2006); *Cromer v. Kraft Foods N.A.,*

*Inc.*, 390 F.3d 812, 820-21 (4th Cir. 2004). Given the mandatory language used in the Rule, English's contempt order must be vacated for this reason as well.

IV.

A.

Should the district court choose to pursue this matter further on remand, we think it appropriate to provide some additional guidance concerning the evidence that may be used to convict English of criminal contempt. Specifically, English's failure to appear at the October 21 hearing cannot form the basis of a contempt charge, because no order of the district court required him to appear on that date.

In English's motion to continue the October 21 hearing, he asserted that he was unavailable on that date because of his involvement in the state court trial. The district court denied the motion on October 19 "for the reasons set forth in the opposition" and did not further explain its reasoning. By then, the court was already aware that English had a scheduling conflict and had formally entered his appearance in the state court matter. Although the court may have presumed that its denial of English's motion to continue would secure his attendance, the court did not issue "a specific, clear, and unequivocal . . . order" compelling English to appear. *Downey*, 30 F.3d at 686. Willful disobedience of such an order is required to support a criminal contempt conviction. *See id.* As a matter of law, English's failure to appear on October 21 cannot be used to convict him of criminal contempt.

However, the same cannot be said for English's failure to appear on October 29. Between the October 21 and October 29 hearings, the district court entered five separate orders that clearly and unequivocally required English to appear and show cause why he should not be held in contempt. True enough, the state court trial was still ongoing on October 29, the date of the show-

cause hearing. Still, the record suggests that this scheduling conflict was one of English's own making, at least in part. A rational trier of fact could conclude that English's failure to take any reasonable measures to relieve himself of his obligation to appear in state court once the October 29 scheduling conflict arose amounted to "a reckless disregard for his professional duty." *Smothers*, 322 F.3d at 442 (citation omitted).

B.

One final issue bears mention. On remand, the contempt proceeding against English shall be reassigned to a different district judge. Rule 42(a)(3) counsels that, "[i]f the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents." We have observed that "in a contempt case . . . the final event in an unfortunate chain of occurrences cannot be realistically considered apart from what went before." *United States v. Moncier*, 571 F.3d 593, 599 (6th Cir. 2009) (cleaned up). Thus, we consider whether English's conduct "was disrespectful towards [the district judge] when viewed in the context of the record as a whole." *Id.*

Ostensibly, these contempt proceedings arose from English's failure to appear on October 21 and October 29. Nevertheless, the district court's order holding English in contempt mentions English's "[d]isrespect to the Court," specifically noting his "unrepentant tone" and "defiant and combative . . . testimony." And the district court explicitly considered English's conduct on the stand when determining the appropriate penalty, pointing out that English "shouted at the Court while testifying at the underlying Contempt hearing and was generally disrespectful." The transcript of English's show-cause hearing supports this characterization, to a degree—on several occasions, English either cut off the district judge's questions or was admonished to keep his answers on track, and the district judge described the hearing as "very emotional."

Even if the contempt proceeding did not initially arise from English's disrespect toward the district judge, by the end, the record bears out the notion that English's behavior permeated the whole affair and had an effect upon the district court's judgment that was not insubstantial. We believe this suffices to bring the proceeding within the spirit of Rule 42(a)(3). A different district judge must see this matter through to the end.

V.

The underlying case is nine years old. The record currently stands at 614 docket entries and about 9,500 pages, and English's contempt proceeding appears to be the last live controversy in this case. The fact that more ink must yet be utilized to resolve this ancillary matter is undoubtedly frustrating to all involved. Nevertheless, the district court's substantive and procedural missteps require remand.

On remand, it is also worth noting that "there are penalties[] other than criminal contempt" that may be levied against attorneys whose conduct falls below the standard of what is expected from members of the federal bar. *Smothers*, 322 F.3d at 442. For instance, courts may "recommend[] to the appropriate bar association that the attorney be subject to disciplinary action such as a public reprimand" or post a public reprimand directly on the court's website. *Id.* at 443. We have also suggested that "the imposition of a fine unaccompanied by a formal sanction could be used" as a "penalt[y] for tardiness without resorting to a finding of criminal contempt." *Id.* Such a penalty could take the form of a fine payable "to a charity of the attorney's choice or to the clerk's office to be used for expenses associated with the jury . . . which necessarily increase when proceedings are delayed." *Id.* Whatever the ultimate resolution may be, we hope the parties and the district court are able to reach it in an expeditious manner.

**VACATED** and **REMANDED**.